CHARLES H. WILLIAMS, Respondent, *v.* THE VILLAGE OF PORT CHESTER, Appellant.

*Negligence — an unreasonable limitation of time within which a claim for injuries must be presented to a municipal corporation is unconstitutional — if the municipal corporation be relieved from liability for defective streets such liability will rest on its officers.*

Section 16 of title 7 of the charter of the village of Portchester (Laws of 1894, chap. 623), which provides that no action for personal injuries shall be maintained against the village "unless the same shall be commenced within one year after the cause of action thereof shall have accrued, nor unless the claim or demand shall be presented in writing to the president or treasurer of said village within thirty days after the time such injuries were received or damages sustained. * * * The omission to present any such claim in the manner and within the time mentioned shall be a bar to any action against the village, and no action upon any such claim or demand shall be commenced until after three months from the presentation thereof," is unconstitutional in so far as it assumes to prevent a person, who has sustained personal injuries because of the negligence of the village, and by reason thereof has been prevented from presenting his claim to the president or treasurer of the village within thirty days after the time such injuries were received, from maintaining an action against the village to recover damages therefor where such person does present such claim within thirty days from the time that he has sufficiently recovered from his injuries to enable him to do so.

As applied to such a case the limitation is unreasonable and operates to deprive the injured person of his property without due process of law.

The Legislature is the primary judge of the question whether the time allowed in a Statute of Limitations is reasonable, but such question may be reviewed by the courts and, where a palpable error has been committed, they may interpose to protect the rights of individuals.

*Semble,* that the Legislature may deny to a person, who sustains personal injuries, in consequence of the defective condition of a city street, a right of action

against the municipality, but in that case such liability would rest upon the officers charged with the duty of keeping the streets in repair; the Legislature cannot relieve both the municipality and the officers from such liability.

APPEAL by the defendant, The Village of Port Chester, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 14th day of January, 1902, upon the decision of the court rendered after a trial at the Westchester Special Term overruling a demurrer to the complaint.

*Louis S. Phillips* and *Jerome A. Peck,* for the appellant.

*Frederick William Sherman,* for the respondent.

WOODWARD, J.:

The plaintiff seeks to recover damages resulting from a fall upon an icy sidewalk of the defendant. The defendant demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action, and the demurrer has been overruled. The defendant appeals to this court.

The immediate question involved and argued upon this appeal is whether the complaint alleges timely notice to the village in accordance with section 16, title 7 of the village charter (Laws of 1868, chap. 818, added by Laws of 1894, chap. 623), which provides that no action of this character can be maintained " unless the same shall be commenced within one year after the cause of action thereof shall have accrued, nor unless the claim or demand shall be presented in writing to the president or treasurer of said village within thirty days after the time such injuries were received or damages sustained. * * * The omission to present any such claim in the manner and within the time mentioned shall be a bar to any action against the village, and no action upon any such claim or demand shall be commenced until after three months from the presentation thereof."

The accident occurred on the 4th day of January, 1898. The notice was served on the village on February sixteenth, forty-three days after the accident, and the action was commenced September 9, 1898. The complaint alleges that by the fall the plaintiff's " skull was fractured and his head was bruised and wounded and whereby

ever since that date injuries and damages have been caused and have accrued to the plaintiff, and he, the said plaintiff, has been prevented from and is unable to pursue his occupation as a carpenter or to earn any wages, and he was caused to suffer and has suffered, and will suffer great pain, and his mind has been and is affected, and he has been and will be obliged to and has laid out money for care for a physician and medicines and for traveling to be cured of his injuries, and the plaintiff was by reason of the said injuries confined to his bed and unable to transact any business, and was by the said acts of the defendant prevented from presenting to its president or treasurer within thirty days after the said 4th day of January, a notice in writing with respect to said occurrence; * * * that on the 16th day of February, 1898, and within thirty days after the time much of the said damages were sustained by the plaintiff and within thirty days from the time when the said acts of the defendant permitted him to do so, and before some of the plaintiff's said injuries were received or some of his said damages sustained, the plaintiff presented or caused to be presented, his said claim and demand in writing to the treasurer of the defendant * * * and the same was so presented more than three months before the commencement of this action."

"A frequent recurrence to the fundamental principles of the Constitution and a constant adherence to those of piety, justice, moderation, temperance, industry and frugality are absolutely necessary to preserve the advantages of liberty and to maintain a free government," says article 18 of part first of the Constitution of Massachusetts, which has reduced to language more of the spirit of our constitutional system of government than any other of the States of the Union. "Every subject of the Commonwealth," says article 11, "ought to find a certain remedy by having recourse to the laws for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

Section 39 of Magna Charta provides: "No freeman shall be taken or imprisoned, or disseized or outlawed or exiled or in any way harmed — nor will we go upon or send upon him — save by the lawful judgment of his peers or by the law of the land."

Section 40 provides: "To none will we sell, to none deny or delay, right or justice."

In the reign of William and Mary, 1691, the legislative authority of the then Colony of New York enacted an act entitled "An Act declareing what are the Rights and Priviledges of their Majesties Subjects inhabiting within their Province of New York." Among the provisions of this act was one that "noe freeman shall be taken and Imprisoned or be dessiezed of his freehold or liberty, or free Custom's, or outLaw'd or Exiled or any other wayes destroyed, nor shall be passed upon, adjudged or Condemned but by the Lawfull Judgement of his peers and by the Law of this Province, Justice nor right shall be neither sold, denied or delayed to any person within this Province." (1 Col. Laws of New York [Comp. Stat. Revis. Com.], 246.)

These broad general principles have reduced themselves in the process of time to the maxim of the common law that "there is no wrong without a remedy." The principle has, perhaps, never been better stated than in the language of Chief Justice MARSHALL in the case of *Marbury* v. *Madison* (1 Cranch, *163) where he says: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain the king himself is sued in the respectful form of a petition and he never fails to comply with the judgment of his court. In the 3d vol. of his Commentaries (p. 23) Blackstone states two cases in which a remedy is afforded by mere operation of law. 'In all other cases,' he says, 'it is a general and indisputable rule that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.' And afterwards (p. 109 of the same vol.) he says, 'I am next to consider such injuries as are cognizable by the courts of the common law. And herein I shall for the present only remark that all possible injuries whatsoever that did not fall within the exclusive cognizance of either the ecclesiastical, military or maritime tribunals, are for that very reason within the cognizance of the common law courts of justice; for it is a settled and invariable principle in the laws of England that every right when withheld, must have a remedy and every injury its proper redress.'

The government of the United States has been emphatically termed a government of· laws and not of men.   It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right."

" The body politic," says the preamble of the Constitution of Massachusetts, " is formed by a voluntary association of individuals : it is a social compact by which the whole people covenants with each citizen and each citizen with the whole people that all shall be governed by certain laws for the common good.   It is the duty of the people, therefore, in framing a constitution of government to provide for an equitable mode of making laws, as well as for an impartial interpretation and a faithful execution of them that every man may at all times find his security in them."

The first Constitution of this State, adopted in 1777, re-enacted the Declaration of Independence, which declares : " We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness.   That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."   And these words are synonymous with those provisions of. the fundamental law (Const. art. 1, § 6) which provide that no member of this State shall " be deprived of life, liberty or property without due process of law."   (*Bartemeyer* v. *Iowa*, 18 Wall. 129, 136.)

In addition to those provisions of section 1 of·article 1 of ·the Constitution that " no member of this State shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers," and that provision of section 6 of the same article, which has already been quoted, the Constitution (Art. 1, § 16) provides as follows : " Such parts of the common law and of the acts of the Legislature of the Colony of New York, as together did form the law of the said Colony, on the nineteenth day of April, one thousand seven hundred and seventy-five, and the resolutions of the Congress of the said Colony and of the Convention of the State of New York, in force on the twentieth day of April, one thousand seven hundred and seventy-seven, which have not since expired or been repealed or altered ; and such acts of the Legislature of this State as are now in

force, shall be and continue the law of this State, subject to such alterations as the Legislature shall make concerning the same."

In view of the great purposes of government and the understanding of the framers of our constitutional system, there can be no doubt that the intent of the constitutional provisions above cited was to guarantee to every member of this State free access to the courts and a full opportunity to have a judicial determination of all controversies which might involve his rights, whether such rights were the outgrowth of contracts or of violated duty. The purpose sought to be accomplished was to afford protection to all rights of mankind, and it is not material that we should be able to say precisely what right is violated, whether of life, liberty or property, but any encroachment upon the fundamental rights of the individual was to find a certain remedy in the law.

"Until a right exists there can be no remedy. But when a right is given, whether by the common law or statute, there must be some remedy when it is withheld." (*Dougan* v. *Champlain Transportation Co.*, 56 N. Y. 1, 5.) In the case of *Reid* v. *Mayor of New York* (139 id. 534) an effort was made to defeat the right of the plaintiff to recover for the negligence of the municipalities of New York and Brooklyn in the operation of the Brooklyn bridge by an amendment to the statute, transferring a liability to the trustees provided by the act. In speaking of the plaintiff's rights, the court say : "The plaintiff had a remedy against these defendants of which she could not be deprived. The undertaking was to carry the plaintiff safely, and for the results of the negligent performance of that undertaking the plaintiff had a remedy against the defendants which she could and did enforce by the commencement of this action. We may say that the right of action was the plaintiff's property. To hold that her remedy was taken away, and thus her pending action was defeated by this legislation, would be giving a latitude of interference beyond any justification in authority." (See *Barry* v. *Village of Port Jervis*, 64 App. Div. 268, 283, and authorities there cited.) Under the facts set forth in the plaintiff's complaint, and which for the purposes of a demurrer must be accepted as true, the plaintiff undoubtedly had a complete cause of action at the time of sustaining the injuries set forth in the pleadings, and this right of action is property under the authorities

above cited.   The plaintiff's case is thus brought within the letter and the spirit of sections 1 and 6 of article 1 of the Constitution of this State, and must, if the high purposes of government are to be fulfilled, have a remedy for the wrong which has been done him through the negligence of the defendant.

If we are right in this proposition, and it is abundantly supported by authority; if the plaintiff, under the Constitution and the common law, has sustained a wrong, and must have a remedy, it follows logically that he must have a reasonable opportunity to assert his rights.   This is necessary to that due process of law which the Constitution provides.   To say, as has been suggested, that the law of the land or due process of law may mean the very act of legislation which deprives the citizen of his rights, privileges and property, leads to a mere absurdity.   The Constitution would then mean that no person should be deprived of his property or rights unless the Legislature shall pass a law to effectuate the wrong, and this would be throwing the restraint entirely away.   A true interpretation of these constitutional phrases is, that where rights are accrued to the citizen under the existing law, there is no power in any branch of the government to take them away; but where they are held contrary to existing law or are forfeited by its violation, these may be taken from him — never by an act of the Legislature, but in the due administration of the law — before the judicial tribunals of the State.   The cause or occasion of depriving the citizen of his supposed rights must be found in the law as it is, or, at least, it cannot be created by a legislative act which aims at their destruction.   Where rights of property are deemed to exist, the Legislature cannot say they shall exist no longer, nor will it make any difference although a process and a tribunal are appointed to secure sentence.   If this is the law of the land and due process of law within the meaning of the Constitution, then the Legislature is omnipotent.   It may, under the same interpretation, pass a law to take away liberty or life without a pre-existing cause and appoint judicial and executive agencies to execute this law.   Property is placed, by the Constitution, in the same category with liberty and life.   (*Wynehamer* v. *People*, 13 N. Y. 378, 393.)

Speaking of that clause of the Constitution of 1821 (Art. 7, § 7) which guarantees that "no person shall    *    *    *    be deprived

of life, liberty or property without due process of law," the court, in *Taylor* v. *Porter* (4 Hill, 140), say : " The words ' due process of law,' in this place, cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property. It will be seen that the same measure of protection against legislative encroachment is extended to life, liberty and property ; and if the latter can be taken without a forensic trial and judgment, there is no security for the others." So, in the case of *Wynehamer* v. *People* (*supra*, 434), it was said : " To give the clause, therefore, any value, it must be understood to mean that no person shall be deprived, by any form of legislation or governmental action, of either life, liberty or property, except as the consequence of some judicial proceeding, appropriately and legally conducted. It follows that a law which, by its own inherent force, extinguishes rights of property, or compels their extinction, without any legal process whatever, comes directly in conflict with the Constitution." The plaintiff in the present instance, accepting the allegations of his complaint to be true, has suffered a wrong at the hands of the defendant ; he has sustained injuries which have unfitted him for the performance of labor, and has been obliged to remain in idleness and to suffer great pain, the duration of which is uncertain, yet it is urged that because he was unable to give the notice prescribed by the charter of Port Chester, within a period of thirty days from the date of the accident, he is to be denied the right of a judicial determination of the amount of his damages, and a remedy for the wrong he has suffered through the negligence of the defendant. This is clearly depriving the plaintiff of his property right in his cause of action ; it is denying to him the rights and privileges for which he, in common with other members of the body politic, entered into a state of society, and which were intended to be preserved to him by the provisions of sections 1 and 6 of article 1 of the Constitution, already quoted. It is a denial of the maxim of the common law, under which the right of action for negligence vests, that " there is no wrong without a remedy," and while it is true, as suggested in *National Tradesmen's Bank* v. *Wetmore* (124 N. Y. 241, 251), that this maxim is not absolutely true, it yet expresses a principle, and it is for that rather than precedent that courts will seek in considering

whether any or what remedy may be had in the administration of justice. (*National Tradesmen's Bank* v. *Wetmore, supra.* See, also, *Harvey* v. *McDonnell*, 113 N. Y. 526, 531.) Not only does the provision of the charter of Port Chester attempt to deprive the plaintiff of his right of property, but it has invaded his liberty, in a constitutional sense, and it now seeks to avoid the responsibility for this encroachment upon his rights. " In a broad sense," say the court in *People* v. *Havnor* (149 N. Y. 195, 199), " whatever prevents a man from following a useful calling is an invasion of his ' liberty,' and whatever prevents him from freely using his lands or chattels is a deprivation of his ' property,' " and it is alleged in the complaint now before us that the plaintiff has been injured so that he is unable to perform any services at his trade, that of a carpenter, through the negligence of the defendant. Certainly, negligence on the part of the defendant is not due process of law, nor is an act of the Legislature which permits the defendant to hide behind its own wrongful conduct and to deny to the plaintiff redress for his injuries. It is a sound principle that he who prevents a thing from being done shall not avail himself of the non-performance he has occasioned (*Farmers' L. & T. Co.* v. *N. Y. & N. R. Co.*, 150 N. Y. 410, 431, and authorities there cited), and the rule is as applicable to municipal corporations as to individuals. The rule is laid down in Cooley's Constitutional Limitations (6th ed. p. 444) as an elementary principle that a party cannot " by his misconduct so forfeit a right that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form. Forfeitures of rights and property cannot be adjudged by legislative act, and confiscations, without a judicial hearing after due notice, would be void as not being due process of law," yet this is exactly what these modern innovations in municipal charters undertake to do, and " it is not without a feeling of satisfaction," to quote the language of Chief Judge RUGER in the case of *Gilman* v. *Tucker* (128 N. Y. 190, 205) " that we have found this amendatory statute unconstitutional, for in every view in which it may be considered it impresses us with the conviction that it is grossly inequitable and unjust." The same learned jurist, writing in the same case, says : " We do not think it is competent for the Legislature to deny, for any cause, to a party who has been illegally

deprived of his property, access to the constitutional courts of the State for relief," and we cannot believe that any court, charged with the administration of the law in a jurisdiction which boasts that there can be no legal wrong without a remedy, will ever sanction the doctrine that the Legislature may create a corporation, charging it with the discharge of certain public functions as the condition of its incorporation, and then relieve it of all responsibility for its failure to discharge that duty by denying to persons wronged by its negligence admission to the courts for a redress of their grievances. This is the practical effect of the statute now under consideration, in so far as this plaintiff is concerned, for if we believe, as we must, for the purposes of deciding the question raised by the demurrer, that the plaintiff's skull was cracked, that his mind was injured, etc., it is evident that he was in no condition to give the notice required by the provisions of the charter. He is thus, through no fault of his own, deprived of a right or privilege which no degree of misconduct could constitutionally destroy (Cooley's Const. Lim. [6th. ed.] 444), and the rule is well established that "the constitutional validity of a law is to be tested, not by what has been done under it, but by what may by its authority be done." (*Gilman* v. *Tucker*, 128 N. Y. 190, 200, and authority there cited; *Colon* v. *Lisk*, 153 id. 188; *Coxe* v. *State*, 144 id. 396.) "It is the duty of every State," say the court in *Missouri Pacific Railway Co.* v. *Humes* (115 U. S. 512, 521), "to provide, in the administration of justice, for the redress of private wrongs," and this duty cannot be discharged by legislation which seeks to place the individual at the mercy of negligent municipal officials by denying him admission to the courts when he is wronged through such negligence.

It is urged, however, that the provision of the charter of Port Chester is different from that of Port Jervis; that in the latter village the forty-eight hour provision was a condition precedent, while in the case at bar the charter provides a limitation which operates as a bar to the action. In the view we take of this question the exact language of the statute is not material; the question is whether it operates to deprive the plaintiff of a reasonable opportunity to vindicate his rights; whether it operates to substantially deny him a remedy for the wrong he has suffered through a neglect of that duty which the defendant owed to him to keep the streets and highways

of Port Chester in a reasonably safe condition for the use of the public. If it has this effect, then it operates to deny to him his rights embraced within the language used in the Constitution (Art. 1, § 6), and which declares that no person shall "be deprived of life, liberty or property without due process of law." It violates the great original compact, "by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good," and "that every man may, at all times, find his security in them" (Preamble to the Const. of Mass.), and it is, therefore, void. It is a violation of the obligation of the contract subsisting between the State and the citizens of that State that they shall have a remedy for every legal wrong; that "'every subject, * * * for injury done to him *in bonis, in terris, vel persona,* by any other subject, be he ecclesiastical or temporal, without any exception, may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, fully without any denial and speedily without delay.'" (1 Black. Com. [Ch. ed.] *141.) The obligation of this contract is equally sacred with all other contracts, and "those rules of construction," says Mr. Chief Justice MARSHALL in *Sturges* v. *Crowninshield* (4 Wheat. 206), "which have been consecrated by the wisdom of ages, compel us to say that these words (§ 10, Article 1, U. S. Const.) prohibit the passage of any law discharging a contract without performance." " Statutes of limitations," says this same great authority (p. 207), "relate to the remedies which are furnished in the courts. They rather establish that certain circumstances shall amount to evidence that a contract has been performed, than dispense with its performance," and the rule is universally recognized that "in all such cases the question is one of reasonableness." (*Terry* v. *Anderson,* 95 U. S. 628.) Statutes of Limitations are indeed statutes of repose. They are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time if he has the power to sue. Such reasonable time is, therefore, defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away (*United States* v. *Wiley,* 11 Wall. 508, 514), and in the case now before us we are only to consider whether the time allowed in this statute is, under

all the circumstances, reasonable. (*Gilfillan* v. *Union Canal Co.,* 109 U. S. 401, 404, citing *Terry* v. *Anderson, supra.*) Of that the Legislature, it may be admitted, is the primary judge, but it is, nevertheless, open to the review of the courts, and where a palpable error has been committed it is for the judiciary to interpose to protect the rights of the individual. (*Terry* v. *Anderson, supra,* 633; *People* v. *Sickles,* 156 N. Y. 541, 548.) In the *Terry* case, where the statute had reduced the limitation on a cause of action which had already been running nearly four years to nine months and seventeen days, it was held reasonable, and the court lays down the rule that in judging of the question of reasonableness " we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts." If we accept this rule, and place ourselves in the position of the legislators who enacted this provision of the charter of Port Chester in 1894 (Laws of 1894, chap. 623), what shall we find ? Was there any great public calamity like the Civil War, which had disturbed the state of society, as was the case in *Terry* v. *Anderson (supra),* or was there any great and controlling reason why the municipal corporation of Port Chester and other villages and cities, whose charters were amended about this time, should be permitted to wantonly expose the citizens of this State to personal injuries without redress ? We find no such reason suggested. On the contrary, the Legislature had, by chapter 572 of the Laws of 1886, enacted that in cities of 50,000 inhabitants or over actions for negligence resulting in personal injuries should not be maintained " unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless notice of the intention to commence such action and of the time and place at which the injuries were received shall have been filed with the counsel to the corporation or other proper law officer thereof within six months after such cause of action shall have accrued." Here was a deliberate act of the Legislature making a condition precedent to the maintenance of this character of actions and requiring notice within a period, not of forty-eight hours or of thirty days, but of six months, and this act received the sanction of the Court of Appeals in *Curry* v. *City of Buffalo* (135 N. Y.

366), which we shall more fully consider in another part of this discussion. This was followed by chapter 568 of the Laws of 1890, in which it was provided that every town in this State should be liable for all damages to persons or property sustained by any defect in its highways or bridges due to the negligence of the highway commissioner, but it was provided: "No action shall be maintained against any town to recover such damages unless a verified statement of the cause of action shall have been presented to the supervisor of the town within six months after the cause of action accrued, and no such action shall be commenced until fifteen days after the service of such statement." (Highway Law, § 16.) The defendant's charter, as we have seen, was amended in 1894, and in 1897 the Village Law was revised (Laws of 1897, chap. 414), and section 322 of this act provides that no action for negligence shall be maintained "unless a written verified statement of the nature of the claim and of the time and place at which such injury is alleged to have been received shall have been filed with the village clerk within six months after the cause of action shall have accrued."

It will thus be seen that whenever the Legislature has enacted a general law (and it has done this for all municipal corporations except the few villages and cities of less than 50,000) it has uniformly adopted six months as the period within which a notice of the accident should be filed, and the only reason which can be given for the shorter period fixed in the defendant's charter, which is consistent with our knowledge of the method of enacting these statutes, is that the charter is the work, in its details, not of the Legislature, but of the people of the municipality, or their agents or servants, and, as a matter of fact, is in effect merely adopted by the Legislature, at the request of the local representatives from the section affected, as a "local measure."

As the act conveyed to the municipality franchises and special privileges, its language must be construed most favorably to the people, and all reasonable doubts in construction must be solved against the defendant (*People* v. *B. R. R. Co.*, 126 N. Y. 29, 36), and we are justified in reaching the conclusion that the attention of the legislative body was never called to this detail of the charter, and that the legislative sanction goes no farther than to the formalities of a revision of the defendant's charter, in harmony with the

general practice, which permits a comity in legislative matters of this character, no questions being asked except as to the desires of the member or members whose district is interested in the legislation. No reason is suggested, and none suggests itself, why the village of Port Chester should have a different rule upon this point than that contained in the General Village Law, and where the effect of the special act is to deprive the plaintiff of all remedy, there should be no hesitation in accepting the general rule laid down by the Legislature as its judgment upon the reasonableness of these statutes regulating the remedy, and to hold the special provisions void.

In Massachusetts they have a general statute (Laws of 1877, chap. 234, with subsequent amendments) which requires that the person injured shall, " within thirty days thereafter, give notice to the county, town, place or persons by law obliged to keep said highway, town way, causeway or bridge in repair, of the time, place and cause of the said injury,  *  *  *  provided, however, that if from physical or mental incapacity it be impossible for the person injured to give the notice within the time hereinbefore provided, he may give notice within ten days after said incapacity is removed." ( *Gay* v. *City of Cambridge*, 128 Mass. 387 ; *May* v. *City of Boston*, 150 id. 517 ; *Lyons* v. *City of Cambridge*, 132 id. 534 ; *Barclay* v. *City of Boston*, 167 id. 596.) At the time of the decision in the *Barclay Case* (*supra*) the statute had been amended so that only ten days were allowed, but the provision was still retained which allowed the plaintiff to show by evidence that he was physically or mentally unable to give the notice, thus preserving his remedy ; but in no instance that we have been able to discover has any court of record sanctioned the doctrine that a person may be injured through the negligence of a municipal corporation and be denied all remedy if the accident is serious enough to prevent the injured party from acting within a given period.

The supporters of this effort at municipal evasion of the duties imposed as a condition of the granting of the charter find great consolation and encouragement in the language of EARL, Ch. J., in the case of *Curry* v. *City of Buffalo* (135 N. Y. 366), where, after deciding that the provisions of the general law requiring a notice within six months was within the limits of the legislative

power, he says : " The whole matter of the maintenance of this class of actions was within the control of the Legislature. It could refuse a right of action against municipalities for such injuries, and it could impose any conditions precedent to the maintenance of such actions." That this was mere dictum, suggested by the previous discussion, but in nowise bearing upon the decision which had already been made, is evident. All that was necessary to be decided in that case was that the statute requiring a notice within six months was constitutional, and with this decision we have no quarrel, for it is clearly within the province of the Legislature to regulate the remedy and to make reasonable conditions precedent. But it will be observed that the learned jurist does not assert the doctrine that the person injured may be deprived of all remedy ; he merely says the Legislature " could refuse a right of action against municipalities for such injuries," which would, of necessity, impose the liability upon the officers or agents who were given control, or were charged with the duty of keeping the highways in condition, as was formerly the case with highway commissioners in towns. Long before EARL, Ch. J., wrote in the *Curry Case* (*supra*) FINCH, J., had said, in the case of *Bennett* v. *Whitney* (94 N. Y. 302), that " it is settled in this court that one who assumes the duties and is invested with the pow-ers of a public officer is liable to an individual who sustains special damage by a neglect properly to perform such duties," and it was with this in mind that the learned jurist used the language above quoted. That we are not mistaken in this view is clearly apparent when we come to consider the case of *Fitzpatrick* v. *Slocum* (89 N. Y. 359), where the court had under consideration a provision of the charter of the city of Brooklyn, which provided (Laws of 1873, chap. 863, tit. 19, § 27) that " the city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council, or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the provisions of this act, * * * but the remedy of the party or parties aggrieved for any such misfeasance or nonfeasance shall be by man-damus or other proceeding or action to compel the performance of the duty, or by other action against the members of the common council, officer or appointee, as the rights of such party or parties may by law admit, if at all." Here was an apparent effort on the part of the

Legislature to relieve the municipality, as such, from all liability for negligence. An action had been brought against the commissioners who had charge of the construction of a bridge over a canal, in the negligent operation of which the plaintiff was injured. It was held that the commissioners were not liable, and the plaintiff urged on appeal that, if the commissioners were not liable, then she was without remedy because of the provisions of the charter above quoted. Commenting upon this situation, the court, speaking through the same learned jurist who wrote in the *Curry Case* (*supra*), say : "Under this section it is said that no liability in a case like this can be enforced against the city, and that the only remedy for the party injured is against some one or more of the city officers. We are of opinion that the exemption created by this section is not so broad as claimed. *There must be a remedy in such a case* where one is injured without fault of his own by a defect in one of the streets or bridges of the city, either against the city or some one of its officers. The primary duty to keep its streets and bridges in safe condition rests upon the city, and there is a general obligation upon it to use proper care and vigilance in putting and keeping its streets and bridges in such condition, and, unless that duty has been plainly devolved upon some officer or officers of the city against whom a remedy for nonfeasance can be had; the remedy is against the city upon its obligation." (See *Hardy* v. *City of Brooklyn*, 90 N. Y. 435 ; *Bieling* v. *City of Brooklyn*, 120 id. 98, 105.)

When we read the language of the *Curry Case* (*supra*) in the light of the above quotation, we shall see that it gives no ground for the construction which has been put upon it by those who have believed that the Legislature was authorized to thus invade the rights of the citizen. All that was intended to be said was that it was within the power of the Legislature to deny a right of action against the municipality by plainly devolving the duty upon some officer or agent of the city against whom a remedy for nonfeasance could be asserted and that the Legislature might impose any reasonable condition precedent to the maintenance of such an action against the municipality, but it was never intended to be held that the Legislature could impose a duty upon the municipality and then permit the municipality to disregard that duty to the injury of individuals without accepting the responsibility for such misconduct.

The *Curry* case was decided in 1892. In 1895 the Legislature of the State of Oregon, perhaps having in mind the language of the court in the *Curry* case, amended the charter of the city of Astoria, and provided (Laws of 1895, p. 572, § 13) that "neither the city of Astoria nor any member of the council thereof shall in any manner be held liable for any damages resulting from a defective condition of any street, alley or highway thereof." Susan Mattson was injured by a defect in the highway and her guardian brought an action to recover damages. The provision of the charter above quoted was pleaded in bar of the plaintiff's action, but the learned trial court refused to dismiss the action, holding that the provision of the charter was void under the Constitution of that State (Art. 1, § 10), which provides that "every man shall have remedy by due course of law for injury done him in person, property or reputation," which is merely a reassertion of the common-law maxim engrafted into our Constitution in the Bill of Rights. This case went to the Supreme Court of Oregon, the court of final resort in that State, and Chief Justice BEAN, delivering the unanimous opinion of the court, said : " That it is within the power of a Legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair, is unquestioned. (*O'Harra* v. *City of Portland*, 3 Or. 525.) But in such case the injured party is not wholly without remedy. He may proceed personally against the officers to whom the charter delegates the duty of keeping the streets in repair, and from whose negligence the injury resulted. ' It is settled law in this court,' says Mr. Justice FINCH, ' that one who assumes the duties and is invested with the powers of a public officer is liable to an individual who sustains special damage by a neglect properly to perform such duties.' (*Bennett* v. *Whitney*, 94 N. Y. 302.) Mr. Justice SWAYNE says : ' The rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct.' (Citing many authorities.) A provision, therefore, of the city charter exempting the city from liability for damages resulting from defective streets is not violative of the constitutional provision referred to, because it does not wholly deny the injured party a remedy for the wrong suffered. The charter provision in question,

however, goes further. It provides that neither the city nor any member of the council shall be liable, and, if valid, prevents a common-law action against the members of the council for their negligent acts or omission, and is practically, therefore, a denial of any remedy, as they are the only officers charged with the duty of keeping the streets in repair. The constitutional provision guarantying to every person a remedy by due course of law for injury done him in person or property is found in the constitutions of many of the States, and means, as said by the Supreme Court of Missouri, ' that for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy ' (*Landis* v. *Campbell*, 79 Mo. 433, 439 ; 49 Am. Rep. 239); or, as interpreted by the Supreme Court of Wisconsin, ' that laws shall be enacted giving a certain remedy for all injuries or wrongs.' (*Flanders* v. *Town of Merrimack*, 48 Wis. 567, 575 ; 4 N. W. 741.) *It was intended to preserve the common-law right of action for injury to person or property*, and while the Legislature may change the remedy or the form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies (*McClain* v. *Williams*, 10 S. D. 332; 73 N. W. 72; *Reining* v. *City of Buffalo*, 102 N. Y. 308; 6 N. E. 792), it cannot deny a remedy entirely. It is immaterial, therefore, whether a municipal corporation is technically liable at common law for negligence in not keeping its streets in repair, because, as said by Mr. Justice EARL in *Fitzpatrick* v. *Slocum* (89 N. Y. 358), ' there must be a remedy in such a case, where one is injured, without any fault of his own, by a defect in one of the streets or bridges of the city, — either against the city or some one of its officers.' And the charter of Astoria attempts to deny both. Whether a municipal corporation was liable to a common-law action or not, its officers were so liable to an individual specially damaged by their negligent act or omission ; and the charter provision under consideration attempted to take away the remedy against the officers, as well as against the city, and is, therefore, void." (*Mattson* v. *City of Astoria*, 65 Pac. Rep. 1066.)

We have already pointed out that the common law and the acts of the Colonial Legislature were made the law of this State by the provisions of the State Constitution, subject to change by the Legislature, and that these, in harmony with the covenants of the State

with its inhabitants, required that every member of this State should
have a remedy for all legal wrongs.    There has been no change in
the common law by act of the Legislature in so far as the law of
negligence, not resulting in death, is concerned ; it is not pretended
that the amendment to the charter of Port Chester has in any man-
ner modified the common law of the State, or that it was intended
to modify it, and the rule is familiar that a statute will not be con-
strued as changing the common law unless the intention appears
from express words or by implication.    ( *Wood* v. *Tunnicliff*, 74
N. Y. 38, 43.)    Where rights are infringed, where fundamental
principles are overthrown, where the general system of the laws is
departed from, the legislative intention must be expressed with
irresistible clearness to induce a court of justice to suppose a design
to effect such objects ( *United States* v. *Fisher*, 2 Cranch, 390), and
it may be assumed, therefore, that the common law is still in full
force and vigor in the State of New York, requiring a remedy for
all legal wrongs to the same extent as is required in the State of
Oregon.    There is no intimation that there are any officials of the
village of Port Chester who are liable to the plaintiffs ; the defend-.
ant stands here upon the assumption that the village of Port Chester
was liable for the injuries done to this plaintiff for a period of
thirty days, and that after that time, no matter how great the wrong
he has suffered, no matter how impossible it was for him to com-
ply with the provision of the charter in reference to a notice, he is
forever barred from recovering his damages.    This, we are per-
suaded, is not the law of this State.    The obligation of a municipal
corporation cannot be impaired by restraining its power of taxation
to the point of disabling it from performance, or by a repeal of the
law under which the obligation was to be enforced, or by enacting
statutes of limitation that do not allow a reasonable time for bring-
ing the action, any more than by open and avowed assaults upon
the contract itself ( *People ex rel. Reynolds* v. *Common Council*,
140 N. Y. 300, 307), and no reason suggests itself why the same limi-
tations do not apply in the matter of a tort, by which the plaintiff is
deprived of his liberty to labor, and his property in his capacity for
daily toil, through no fault of his own, and by reason of the negligence
of the defendant.    " It is not necessary at this day," say the court
in *People* v. *King* (110 N. Y. 418, 423) " to enter into any argument

to prove that the clause in the bill of rights that no person shall ' be deprived of life, liberty or property without due process of law' (Const. art. 1, § 6) is to have a large and liberal interpretation, and that the fundamental principle of free government, expressed in these words, protects not only life, liberty and property, in a strict and technical sense, against unlawful invasion by the government in the exertion of governmental power in any of its departments, but also protects every essential incident to the enjoyment of those rights," and we know of nothing more essential to the rights of the plaintiff in the case now before us than an opportunity to have his damages assessed for the wrong which has been worked against his fundamental rights. In *Gilbert* v. *Ackerman* (159 N. Y. 118, 124) it was said that " the right possessed by a person of enforcing his claim against another is property, and if a statute of limitations, acting upon that right, deprives the claimant of a reasonable time within which suit may be brought, it violates the constitutional provision that no person shall be deprived of property without due process of law." It is conceded that the Port Chester statute is a statute of limitations in its effect, and the question to be decided is whether thirty days is a reasonable time for a person, injured and incapacitated by the wrongful act of the defendant, to assert his rights. We have previously had occasion to consider the authorities on the question of a reasonable time in *Barry* v. *Village of Port Jervis* (64 App. Div. 268, 283 *et seq.*), and we have no doubt that under the facts set forth in the pleadings, in connection with the repeated declarations of the Legislature in general laws, fixing the period for notices of this character at six months, the limitation upon the plaintiff's absolute and inalienable right to a remedy fixed by the charter of Port Chester is unreasonable and void. " All limitation laws, however," says Judge Cooley (Cooley's Const. Lim. [6th ed.] 449), " must proceed on the theory that the party, by lapse of time and omissions on his part, has forfeited his right to assert his title in the law," and that these laws must also " proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing right of claimants without affording this opportunity: if it should attempt to do so, it would be not a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." The

plaintiff in this action has had no opportunity to try his rights in the courts; he has been rendered unfit and unable to transact his business or to give the notice required, and now it is urged that he is without a remedy; that as to him all the great purposes for which society is organized is at an end, and that he must bear the burden of the injuries inflicted upon him through no fault of his own, but through the neglect of duty on the part of the defendant.

" The purposes for which men enter into society will determine the nature and terms of the social compact;" say the court in *Calder* v. *Bull* (3 Dall. 388), " and as they are the foundation of the legislative power, they will decide what are the proper objects of it. The nature and ends of legislative power will limit the exercise of it.    This fundamental principle flows from the very nature of our free republican governments, that no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit.    There are acts which the Federal or State Legislature cannot do, without exceeding their authority.    There are certain vital principles in our free republican governments, which will determine and overrule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by positive law; or to take away that security for personal liberty, or private property, for the protection whereof the government was established.    An act of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority."    (See *Jones* v. *Robbins*, 8 Gray, 329, 340; *Commonwealth* v. *Anthes*, 5 id. 185, 222.)    " To secure these rights," says the Declaration of Independence, " governments are instituted among men, deriving their just powers from the consent of the governed."    We have never consented that the right to " life, liberty and the pursuit of happiness;" the right to " life, liberty or property " should be taken from us by a mere act of the Legislature.    We have consented that this might be done by due process of law, which has been well defined to be " law in its regular course of administration through courts of justice."    (2 Kent's Com. *13.)    It means that every citizen shall have his day in court, and that he shall have the benefit of those rules of the common law generally deemed to be fundamental in their nature because sanctioned by reason, by which judicial trials are governed.    These rules, which

secure to the accused a judicial trial, it is beyond the power of the Legislature to subvert. (*Wynehamer* v. *People*, 13 N. Y. 378, 447.) It is beyond its power to deprive a person of his liberty, or to deprive him of his property, by mere legislation. It is not beyond the legislative power to regulate what shall be the due process of the law, by which the citizen may be put upon his trial concerning his liberty, or his property; provided that the statute destroys none of those safeguards to individual freedom and rights, which the people of England finally acquired for themselves, and which, as part of the common law of that land, we took over and adopted in the formation of a State government. They are preserved to all persons by the Constitution of the State, and it is the duty of the judicial branch of the government to uphold them whenever brought into question. (*People* v. *Sickles*, 156 N. Y. 541, 548.) In the case at bar there is under consideration, not a regulation of that due process of law which is required by the Constitution, but a statute which undertakes to deny to a citizen of this State all remedy for the wrong he has suffered; to deny to him an opportunity to have his day in court, not because of any conduct on his part which would warrant the presumption that he had abandoned or forfeited his rights, but because, being incapable of action through the wrongful conduct of the defendant, he has not served a notice of his intention to bring this action within thirty days of the time when the wrong was consummated — a time which no court of competent jurisdiction has ever yet held was sufficient to bar a civil action, where the plaintiff was suffering under no possible disability. Society is organized to a poor purpose, so far as this plaintiff is concerned, and he ought to be absolved from its duties, if he may not under the circumstances which he has pleaded, have access to the courts for the damages he has suffered. " Society in every state is a blessing," says a great author, " but government, even in its best state, is but a necessary evil; in its worst state an intolerable one; for when we suffer or are exposed to the same miseries by a government, which we might expect in a country without a government, our calamity is heightened by reflecting that we furnish the means by which we suffer," and this thought is peculiarly applicable to the condition of this plaintiff if he must go on contributing his portion to the support of a government

which, in his necessity, denies to him the remedy of a trial according to the course of the common law, in the same manner that other valid causes of action are tried.

For the reasons here detailed, as well as for those which have been previously set forth in *Green* v. *Village of Port Jervis* (55 App. Div. 58) and *Barry* v. *Village of Port Jervis* (64 id. 268, and the authorities there cited), we reach the conclusion that the charter of the village of Port Chester, in so far as it relates to the present case, is unconstitutional and void ; that it denies to the plaintiff the rights guaranteed to him by the Constitution, and that it does not constitute that due process of law demanded by both the State and Federal Constitutions.

The interlocutory judgment appealed from should be affirmed, with costs.

All concurred.

Interlocutory judgment affirmed, with costs.