LAWRENCE HANFGARN, Respondent, *v.* GEORGE MARK, Appellant.*

Second Department, July 2, 1936.

*Jesse C. Rogers* [*Samuel Binder* with him on the brief], for the appellant.

*Edwin G. Jenkins,* for the respondent.

*Reese D. Alsop* [*Emory R. Buckner, Philip A. Carroll, John G. Jackson, George Martin, Guido Pantaleoni, John D. Peabody, Frank Reavis, Kenneth Spence, Walbridge S. Taft* and *Martin Taylor* with him on the brief], for *amici curiæ.*

* Affg. 159 Misc. 122.

YOUNG, J. The action is brought to recover damages for criminal conversation and alienation of the affections of plaintiff's wife. The complaint is in the usual form and demands $30,000 damages. The defendant moved to dismiss the complaint on the ground that, on its face, the court had no jurisdiction of the subject of the action. The court denied the motion and made the order from which the appeal is taken.

This appeal involves the constitutionality of the recent legislation abolishing actions for alienation of affections, criminal conversation, seduction, and breach of contract to marry. (Laws of 1935, chap. 263, effective March 29, 1935.) This cause of action arose after the act took effect. This statute adds article 2-A to the Civil Practice Act, sections 61-a to 61-i, inclusive. Sections 61-a and 61-b are as follows:

" § 61-a. Declaration of public policy of State. The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry, having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the State that the best interests of the people of the State will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination.

" § 61-b. Certain causes of action hereafter accruing abolished. The rights of action heretofore existing to recover sums of money as damage for the alienation of affections, criminal conversation, seduction, or breach of contract to marry are hereby abolished."

The remaining sections of this article are not involved in this appeal. In substance, they provide a short statute of limitations for existing rights of action, make it unlawful to institute such actions, provide penalties for violation of its provisions, etc.

It is unnecessary to consider the question raised by respondent as to the reasonableness of the sixty-day period of limitation for the bringing of actions upon causes which had accrued prior to the enactment of the statute, or whether penalties imposed are excessive, because these questions are not involved in this case. The serious question in this case is whether the Legislature has power

to abolish a common-law cause of action without providing, in substitution therefor, some other adequate remedy.

In *Williams* v. *Village of Port Chester* (72 App. Div. 505) this court held that a provision of the charter of the village of Port Chester that no action for personal injuries should be maintained against the village unless it should be commenced within one year after the cause of action had accrued nor unless the claim or demand should be presented in writing to the president or treasurer of the village within thirty days after the time such injuries were received, and that the omission to present any such claim within the time mentioned should be a bar to any action against the village, etc., was unconstitutional in so far as it assumed to prevent a person who had sustained injuries because of the negligence of the village and by reason thereof had been prevented from presenting his claim within thirty days after the injuries were received, from maintaining an action against the village to recover damages therefor, where such person did present his claim within thirty days from the time that he had sufficiently recovered from his injuries to enable him to do so, and that, as applied to such a case, the limitation was unreasonable and operated to deprive the injured person of his property without due process of law. The court in that case said:

" These broad general principles have reduced themselves in the process of time to the maxim of the common law that ' there is no wrong without a remedy.' * * *

" In view of the great purposes of government and the understanding of the framers of our constitutional system, there can be no doubt that the intent of the constitutional provisions above cited [Art. 1, §§ 1, 6 and 16] was to guarantee to every member of this State free access to the courts and a full opportunity to have a judicial determination of all controversies which might involve his rights, whether such rights were the outgrowth of contracts or of violated duty. * * * Any encroachment upon the fundamental rights of the individual was to find a certain remedy in the law. * * *

"A true interpretation of these constitutional phrases is, that where rights are accrued to the citizen under the existing law, there is no power in any branch of the government to take them away; but where they are held contrary to existing law or are forfeited by its violation, these may be taken from him — never by an act of the Legislature, but in the due administration of the law — before the judicial tribunals of the State. The cause or occasion of depriving the citizen of his supposed rights must be found in the law as it is, or, at least, it cannot be created by a legislative act

which aims at their destruction. Where rights of property are deemed to exist, the Legislature cannot say they shall exist no longer, nor will it make any difference although a process and a tribunal are appointed to secure sentence."

*Williams* v. *Village of Port Chester* (*supra*) arose on a demurrer to the complaint, and this court affirmed an interlocutory judgment overruling the demurrer. The case was subsequently tried and a judgment in favor of plaintiff entered, which was affirmed by this court (97 App. Div. 84) and by the Court of Appeals (183 N. Y. 550).

*New York Central R. R. Co.* v. *White* (243 U. S. 188) involved the constitutionality of the present New York Workmen's Compensation Law, and, while recognizing in effect the principle above referred to, the court held that the Compensation Act furnished a reasonably just substitute. (See, also, *Gibbes* v. *Zimmerman*, 290 U. S. 326; *Truax* v. *Corrigan*, 257 id. 312; *Oshkosh Waterworks Co.* v. *Oshkosh*, 187 id. 437; *Edwards* v. *Kearzey*, 96 id. 595; *Terry* v. *Anderson*, 95 id. 628; *Poindexter* v. *Greenhow*, 114 id. 270; *Twining* v. *New Jersey*, 211 id. 78; *Crane* v. *Hahlo*, 258 id. 142.)

The Legislature undoubtedly has power to change or alter the common-law rules of evidence and method of procedure and to regulate the practice and procedure in actions brought in our courts, or even to abrogate certain rules of evidence or certain matters of practice and procedure where such rules or practice have become obsolete, or otherwise, in the interest of the due administration of justice. But it is one thing to regulate, change or alter methods of procedure in actions, and quite another thing to abolish entirely a right of action theretofore existing at common law.

The appellant asserts that the processes of law and the spirit of a modern society have abolished the inequality of rights between the sexes, and contends in substance that the basis of the common-law rights of action in the husband was the possibility that, by the infidelity of a wife, the husband might be called upon to support illegitimate children, or the legitimacy of his own offspring be cast in doubt; that the husband had a property right in the body, and a right to the personal enjoyment of his wife, for the invasion of which right the law permitted him to sue as a husband, and that the wrongful act was treated as an actual trespass upon the marital rights of the husband, although the consequent injury to him was on account of the corruption of the body and mind of the wife. (*Tinker* v. *Colwell*, 193 U. S. 473, 483.) In other words, the old common-law doctrine was that the husband had an absolute right of possession of his wife, like any other chattel, and that any interference with that right gave him an action for damages against the

trespasser. The appellant, therefore, argues that, since the husband and wife by statute now possess equal rights and that the husband no longer may treat a wife as a chattel, the basic reason for the common-law action of alienation of affections or criminal conversation no longer exists, and, therefore, the Legislature is at liberty to abolish it. The Court of Appeals, however, has recently recognized the equality of the rights of the husband and of the wife under our present statutes, and, in an elaborate opinion, extended the right of action for alienation of affections to the wife and has further recognized that this right of action is a substantial one and for the benefit of either party to the marriage. (*Oppenheim* v. *Kridel*, 236 N. Y. 156.) In that case the court said: " Barring the fictions which apply only to procedure, whatever reasons there were for giving the husband at common law the right to maintain an action for adultery committed with his wife, exist to-day in behalf of the woman for a like illegal act committed with her husband. If he had feelings and honor which were hurt by such improper conduct, who will say to-day that she has not the same, perhaps even a keener sense of the wrong done to her and to the home? If he considered it a defilement of the marriage-bed, why should not she view it in the same light? The statements that he had a property interest in her body and a right to the personal enjoyment of his wife are archaic unless used in a refined sense worthy of the times and which give to the wife the same interest in her husband. The fiction of assault whereby courts were given jurisdiction has long since vanished except for historical interest. The danger of doubt being thrown upon the legitimacy of the children, which seems to be the principal reason assigned in all the authorities for the protection of the husband and the maintenance of the action by him, may be offset by the interest which the wife has in the bodily and mental health of her children when they are legitimate. Science to-day teaches us the dire consequences which sometimes follow promiscuous intercourse by a man. It is common knowledge that the sins of the father are sometimes visited not only upon the children but upon the wife in the resultant diseases contracted through breaches of the marriage contract. The husband must not have discredit thrown upon the legitimacy of his children. The wife should have no doubt about the health and cleanliness of her husband or of her offspring. Legitimacy is important. Children of sound mind and body are equally as important."

The court quotes with approval from *Colwell* v. *Tinker* (169 N. Y. 531) as follows: " While loss of service is usually pleaded in this form of action, yet its real foundation is the personal injury inflicted upon the husband. The offense charged is a most grievous

wrong against social order and society; it strikes at the foundations of the home and the legitimacy of offspring. The husband, who is entitled to live with his wife and enjoy her society in the marriage relation, finds himself humiliated and, to a certain extent, disgraced by a public scandal; the marriage bed is dishonored; his domestic peace and comfort are destroyed and he is subjected to great mental suffering."

And then continues: "Are we prepared to say that humiliation, disgrace, dishonor and mental suffering afflict a husband but do not afflict a wife? The law is not so foolish. The United States Supreme Court in this same case (193 U. S. 473) said: ' Many of the cases hold that the essential injury to the husband consists in the defilement of the marriage bed, in the invasion of his exclusive right to marital intercourse with his wife and to beget his own children. This is a right of the highest kind, upon the thorough maintenance of which the whole social order rests, and in order to the maintenance of the action it may properly be described as a property right.' (p. 484)."

It will be observed, therefore, that the Court of Appeals, in the case last cited, treated this right of action as a substantial one and as involving a serious invasion of marital rights, justifying an action for damages.

Not all actions brought for alienation of affections, criminal conversation, seduction and breach of contract to marry come within the condemnation of section 61-a of the statute. Some are meritorious and involve rights that are substantial and important, as the Court of Appeals has stated in *Oppenheim* v. *Kridel* (*supra*). The actions abolished existed at common law, and, if important rights are involved, the Legislature is without power to abolish the action without providing a substitute. This it has not done, and I can see no way to uphold the statute.

The order should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., and JOHNSTON, J., concur; DAVIS and ADEL, JJ., dissent and vote to reverse and to dismiss the complaint, with separate memoranda.

DAVIS, J. (dissenting). I dissent and vote to reverse and dismiss the complaint. We consider here only whether the statute abolishing the cause of action for alienation of affections and criminal conversation was within the constitutional powers of the Legislature. It must stand on the basis of the proper exercise of the police power, or not at all. If the statute is arbitrary, capricious or unreasonable, it is void. The Legislature has found

that such actions are in the main founded on fraud, and brought collusively for the purpose of oppression and extortion. General knowledge and public opinion support this view. It is for the Legislature primarily to determine the public policy of the State. It may limit or abolish property rights in the public interests and public welfare. The act is not arbitrary or unreasonable. The police power properly exercised is above constitutional inhibitions.

ADEL, J. (dissenting). I concur with the memorandum of DAVIS, J., for reversal and dismissal of the complaint. The legislation is a reasonable exercise of police power. The Legislature, having found abuses existing, declared the public policy of the State to destroy such abuses. (*Fearon* v. *Treanor*, 248 App. Div. 225.)

Order denying motion to dismiss the complaint for lack of jurisdiction of the subject-matter of the action affirmed, with ten dollars costs and disbursements. Defendant may serve his answer within ten days from the entry of the order hereon.