(97 App. Div. 84.)

WILLIAMS v. VILLAGE OF PORT CHESTER.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. MUNICIPAL CORPORATIONS — DEFECTIVE HIGHWAYS — INJURIES — NOTICE OF CLAIM—STATUTES—SUBSTANTIAL COMPLIANCE.

Where plaintiff, after being injured by a defect in a highway in the village of Port Chester, was unable, by reason of his injuries, to give notice thereof to the village within 30 days after the injuries were received, as required by Laws 1894, p. 1570, c. 623, but notice was given within 30 days after plaintiff was physically and mentally able to do so, the giving of such notice constituted a substantial, and therefore sufficient, compliance with the statute.

Appeal from Trial Term, Westchester County.

Action by Charles H. Williams against the village of Port Chester. From a judgment in favor of plaintiff for $1,176.14, and from an order denying a motion for a new trial on the minutes, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Louis S. Phillips (Jerome A. Peck, on the brief), for appellant.
Frederick W. Sherman, for respondent.

WOODWARD, J.    The action was brought to recover damages for injuries sustained by the plaintiff in consequence of his falling upon an alleged defective sidewalk in the defendant village.    Section 16 of title 7 of the defendant's charter (Laws 1868, p. 1850, c. 818, added by Laws 1894, p. 1570, c. 623) provides that no action for personal injuries shall be maintained against the village "unless the claim or demand shall be presented in writing to the president or treasurer of said village within thirty days after the time such injuries were received."    The plaintiff was injured January 4, 1898, but did not serve the statutory notice until February 16, 1898.    The plaintiff, however, gave evidence tending to show that his mental and physical condition following the accident were such as to prevent him from filing the statutory notice sooner than he did.

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 1706.

This case was before this court on demurrer (72 App. Div. 505, 76 N. Y. Supp. 631); the contention being that the complaint did not state a cause of action, because it failed to allege that a notice in writing had been served upon the municipality within 30 days of. the time of the accident, although it was averred in the complaint that the plaintiff was prevented from doing this by reason of the injuries which he had sustained, and that he did serve such notice within 30 days of the time that he was physically and mentally able to do so. The demurrer was overruled by the court below, and that action was affirmed by this court. We might be content to rest the case upon the discussion upon the former appeal, were it not for the fact that the defendant still urges the statute as a bar to the recovery, and we are so impressed with the manifest injustice of these short statutes, and the Legislature is so persistent in enacting local statutes designed to deprive people of that equal protection of the law which the very spirit of our institutions demands, that we are constrained to add to the considerations which were presented upon the overruling of the demurrer. Before doing so, it may be proper to consider some of the questions presented by the record of the trial, and which are urged here against the recovery.

The defendant urges that "the defendant was not guilty of negligence which caused the accident," and cites many authorities in support of this contention. It is a sufficient answer to the defendant's contention that the case was submitted to the jury upon the distinct theory that the question of negligence was whether a certain depression in the sidewalk, which permitted the accumulation of water, and which subsequently froze and rendered the place dangerous, was such a defect in the sidewalk as to charge the defendant with liability under the facts as presented by the evidence. There was no exception to the charge as delivered by the court on the part of the defendant. There was no suggestion that there was any other question as to the defendant's negligence, except that, upon the plaintiff asking for three specific charges, two of which were allowed—the third being qualified—the defendant excepted "to the three last propositions," without calling attention to any error in the language or assumptions of the requests. Two of these requests to charge had been granted without exception before the defendant made any move whatever, and, on the court giving a qualified sanction to the third, the defendant merely excepted to the last three propositions, which failed, we think, to present any question for review. The defendant then requested the court to make certain specific charges, and these were either complied with, or had already been covered by the main charge, to which no exception had been taken, or were not made the subject of exceptions, so that the verdict of the jury upon this point must be conclusive. To urge now that there were concurring causes of the accident, without which the accident would not have happened, and that, these concurring causes being due to the elements, the defendant is not liable, is to introduce upon appeal matters which were not called to the attention of the trial court, and this will not be permitted, that injustice may be accomplished.

While the evidence as to the absence of contributory negligence is not as distinct as might be desired, we are of opinion that the facts

and circumstances disclosed by the evidence were sufficient to support the verdict of the jury. The exceptions to the charge of the learned justice upon the requests of the parties have been sufficiently discussed, and are without merit.

The defendant's counsel urges, however, that the "plaintiff is barred from maintaining this action against the village because of failure to file notice of his claim within thirty days after the accident." In the view of counsel, the previous decision in this case was based largely upon the assumption that the plaintiff would be utterly deprived of a remedy if this statute was held to be good. Our attention is called to a provision of defendant's charter (chapter 623, p. 1570, Laws 1894, amending section 1 of title 5 of chapter 818, p. 1869, Laws 1868) which provides that:

"The said village is hereby declared a separate road district * * * and the trustees shall possess all the powers given by law to the commissioners of highways of towns within the limits of said village, and the charge and expense of working and repairing all roads declared public highways in said village, and also for making, altering, repairing and improving bridges on or over the same, and upon or over any streets or highways in said village, except bridges over the Byram river, between the village of Port Chester and the town of Greenwich, in the state of Connecticut, shall be raised by tax upon the taxable inhabitants and property of said village, in the same manner as ordinary and general taxes, and the said trustees shall be under the same obligation to keep said road and bridges in repair, and be subject to the same liabilities in respect thereto, as commissioners of highways," etc.

It is very evident that this language, that the "said trustees shall be under the same obligation to keep said road and bridges in repair, and be subject to the same liabilities in respect thereto, as commissioners of highways," refers to the road and bridges over Byram river, between the village of Port Chester and the town of Greenwich, in the state of Connecticut, and not to the general subject of highways. It may be assumed that there was some special law or arrangement in respect to the bridges over Byram river and the approaches thereto—this being upon the boundary of the state—and this the charter provided for in the language above quoted. It is not necessary, however, to inquire into this matter, for, if it be assumed that the charter had reference to the liabilities of highway commissioners generally, and that those were imposed upon the trustees of the village, there is nothing in the highway law which helps the defendant in this case. The amendment to the charter of Port Chester was adopted in 1894. The highway law (chapter 568, p. 1181, Laws 1890) was adopted four years before. Section 16 of this act provides:

"Every town shall be liable for all damages to person or property, sustained by reason of any defect in its highways or bridges, existing because of the neglect of any commissioner of highways of such town," etc.

Section 17 of the same act provided that:

"If a judgment shall be recovered against a town for damages to person or property, sustained by reason of any defect in its highways, or bridges, existing because of the neglect of any commissioner of highways, such commissioner shall be liable to the town for the amount of the judgment," etc.

It will thus be seen that there was no liability on the part of highway commissioners of towns to persons injured through the negligence of such commissioners, and the provision of the charter of Port Chester to which our attention is called has absolutely no bearing whatever upon

this case. Since the adoption of chapter 700, p. 935, of the Laws of 1881, the primary liability to persons injured through the negligence of highway commissioners has been that of the town. Lane v. Town of Hancock, 142 N. Y. 510, 515, 37 N. E. 473. The assumption of defendant's counsel that the charter of Port Chester gave some kind of a remedy against the trustees individually is not justified by the facts. This likewise disposes of Bennett v. Whitney, 94 N. Y. 302, which, if ever an authority for the defendant's position, has ceased to have any weight since the amendment of the common rule of liability, placing the obligation, as it related to the injured person, upon the town.

The very recent decision of the Court of Appeals in the case of Walden v. City of Jamestown, 178 N. Y. 213, 70 N. E. 466, where one of these short statutes was under consideration, shows the great reluctance of the courts to give liberal effect to this class of legislation. The facts in this case, as established by the verdict of the jury, bring it well within the principles there recognized and asserted, although the difference in the length of time is very material in the present case—both in the time prescribed by the charter, and in the variation between the accident and the time of performance—so that it may be material, in this or some similar case, to consider the constitutional right of the Legislature to impose unreasonable conditions precedent to a right of recovery. We desire to supplement our prevous discussion, particularly upon the point suggested by the dictum of Earl, C. J., in the case of Curry v. City of Buffalo, 135 N. Y. 366, 32 N. E. 80, where, after determining that the provisions of a general law requiring a notice in cities of over 50,000 inhabitants within six months of the happening of an accident, as a condition precedent to a recovery, were valid, he says:

"The whole matter of the maintenance of this class of actions was within the control of the Legislature. It could refuse a right of action against municipalities for such injuries, and it could impose any conditions precedent to the maintenance of such actions."

Is this, without any limitation, a sound proposition of law? Have "we, the people of the state of New York, grateful to Almighty God for our freedom" (Preamble, Const.), established a Constitution, and delegated a legislative power to create artificial persons, owing a duty to their creators, and to exempt them from all civil liability for a neglect of this duty to the injury of individuals? Have we delegated the power to create artificial persons who are not answerable to the law of the land, who may disregard the duties which the law imposes on citizens—the duty of exercising reasonable care not to injure others—without paying the penalty of such neglect? "I cannot," says Mr. Justice Chase in Calder v. Bull, 3 Dall. 386–388, 1 L. Ed. 648, "subscribe to the omnipotence of a state Legislature, or that it is absolute and without control, although its authority should not be expressly restrained by the Constitution or fundamental law of the state. The people of the United States erected their Constitutions or forms of government to establish justice, to promote the general welfare, to secure the blessings of liberty, and to protect their persons and property from violence. The purposes for which men enter into society will determine the nature and terms of the social compact, and, as they are the foundation of the legislative power, they will decide what are the proper objects of it. The nature and ends of legislative power will limit the exercise of it. This funda-

mental principle flows from the very nature of our free republican governments—that no man should be compelled to do what the laws do not require, nor to refrain from acts which the laws permit.  There are acts which the federal or state legislature cannot do without exceeding their authority.  There are certain vital principles in our free republican governments which will determine and overrule an apparent and flagrant abuse of legislative power, as to authorize manifest injustice by positive law, or to take away that security for personal liberty or private property for the protection whereof the government was established."   In complete harmony with this view of the limitations under which the Legislature acts is the discussion by Allen, J., in his great opinion in People ex rel. Bolton v. Albertson, 55 N. Y. 50, 55, where he says:

"A written constitution must be interpreted and effect given to it as the paramount law of the land, equally obligatory upon the Legislature as upon other departments of government and individual citizens, according to its spirit and the intent of its framers, as indicated by its terms.  An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden.  A thing within the intent of a constitution or statutory enactment is, for all purposes, to be regarded as within the words and terms of the law.  A written constitution would be of little avail as a practical and useful restraint upon the different departments of government, if a literal reading only was to be given it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts palpably in evasion of its spirit should be sustained as not repugnant to it.  The restraints of the Constitution upon the several departments, among which the various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpations of power, or the exercise of power in disregard of the express provision or plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the pretense of a liberal or enlightened interpretation, or in deference to the judgment of the Legislature, or some supposed necessity, the result of a changed condition of affairs."

See People ex rel. Burby v. Howland, 155 N. Y. 270, 280, 49 N. E. 775, 41 L. R. A. 838; People ex rel. Rodgers v. Coler, 166 N. Y. 1, 11, 59 N. E. 716, 82 Am. St. Rep. 605, 52 L. R. A. 814, and authorities there cited.

Having in mind that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury," and that "one of the first duties of government is to afford that protection" (Chief Justice Marshall in Marbury v. Madison, 1 Cranch, 137, 163, 2 L. Ed. 60), and that the declared purpose of our state Constitution is to secure the blessings of "freedom," which is used synonymously with "liberty," let us examine our constitutional system, and determine, if we can, whether the Legislature has the power to create artificial persons, and to permit them to be above the rules of law which govern other citizens.  A corporation created under the laws of a state is, from its creation, through the whole of its existence, a citizen of that state.   It is a person, within the meaning of the law regulating the institution and conduct of suits, and cannot emigrate from the state under the laws of which it was created, and may well be taken to be a resident of the state within which it is found.

Atlanta & Florida R. R. Co. v. Western R. of Alabama, 50 Fed. 790, 1 C. C. A. 676, 2 U. S. App. 227. And in this state it has long been recognized that a municipality, although a political division of the state, possesses two separate and distinct powers, one of which may be termed governmental or public, and the other private or corporate. In the exercise of the first of these powers, the village or city is invested with the powers of sovereignty, while in the exercise of the second it occupies the same relation to the individual that any other corporate body does. Eddy v. Village of Ellicottville, 35 App. Div. 256, 258, 259, 54 N. Y. Supp. 800, and authorities there cited. It is upon this distinction between public and private functions that in the state of New York municipal corporations are held to be liable in damages for injuries resulting from defective highways (Conrad v. Trustees of Village of Ithaca, 16 N. Y. 158, and note at page 161), while in Massachusetts and other New England states it is held that liability only attaches in the case of a statute giving a right of action (Hill v. Boston, 122 Mass. 344, 23 Am. Rep. 332, discussing fully the New England doctrine and its limitations).

The first section of the first article of our state Constitution provides that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." This language and the spirit of this section contemplates that equal protection of the law which is guarantied by the fourteenth amendment to the Constitution of the United States, and, as has been said:

"These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws." Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220.

And in Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, a Kansas statute was declared unconstitutional and void because it did not operate equally as between the Kansas City Stockyards Company and other companies or corporations engaged in the same line of business, thus recognizing the equal rights of corporations with individuals and companies; and the same authority cites approvingly State v. Haun, 61 Kan. 146, 153, 154, 59 Pac. 340, 47 L. R. A. 369, to the effect that "equal protection of the laws means equal exemption with others of the same class from all charges and burdens of every kind." If, therefore, the Legislature may create an artificial person, and exempt such person from the obligation of responding in damages for the breach of a duty owed to third persons, why may it not pick out a favorite person, and exempt him from such liabilities? Why may it not say that the New York, Lake Erie & Western Railroad Company shall not be liable in damages for its negligence in the control of highways, for railroads are public highways (Cherokee Nation v. Kansas Railway Co., 135 U. S. 641, 657, 10 Sup. Ct. 965, 34 L. Ed. 295), at the same time leaving the New York Central & Hudson River Railroad Company subject to the common-law liability? Where is the distinction between a quasi public corporation, like a railroad company, and a municipal corporation, in so far as it relates to the obliga-

tion of either to respond in damages for a neglect of duty by which a third party suffers injury? They are both private corporations, in their relation to the duty to maintain highways in a reasonably safe condition. People ex rel. D., etc., R. R. Co. v. Batchellor, 53 N. Y. 128, 139, 13 Am. Rep. 480 et seq.; Conrad v. Trustees of Village of Ithaca, supra, and note. No good reason suggests itself why the Legislature might create the municipal corporation known as the "Village of Port Chester," and exempt it from liability for a breach of its duty to third persons in its private character, while denying a like exemption to a railroad corporation or a private individual. Both corporations accept their charters for the accomplishment of private ends, and such acceptance raises an implied contract on their part to perform the duties which their charters require, and this contract inures to the benefit of every individual interested in its performance. Conrad v. Trustees of Ithaca, supra, and note; Missano v. Mayor, 160 N. Y. 123, 127, 54 N. E. 744, and authorities there cited. This duty on the part of municipal corporations is to care for the streets and highways within the corporation. See Missano v. Mayor, supra.

The above quoted provision of the Constitution, coupled with the provision of section 6 of article 1 that no person shall "be deprived of life, liberty or property without due process of law," and that it "has been more than once said judicially that one of the principles upon which this government is founded is that of equality of right" (Cotting v. Kansas City Stockyard Co., 183 U. S. 110, 22 Sup. Ct. 30, 46 L. Ed. 92), shows the spirit of our fundamental law, and affords the cue to the true interpretation of all of its provisions. We are to read the entire instrument, and interpret it for the purpose of preserving our freedom; for the purpose of accomplishing equal and exact justice between all the members of the state, whether natural or artificial persons; for the purpose of preserving the right to "life, liberty and property," except as the same may be taken from us by due process of law—due process of law being process due according to the law of the land (Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678), which we will hereafter consider. What, then, are we to understand by the language used in section 3 of article 8 of the Constitution, when it declares that "the term corporations as used in this article shall be construed to include all associations and joint-stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships. And all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons"? Can there be any question that it was the intention of this provision that the artificial citizens to be created by the Legislature should, in so far as their civil rights were concerned, be placed upon an equal, not a better, footing than natural born citizens? Could the language have any other purpose than to read into every statute creating a corporation for private purposes, as distinguished from a mere agency of the state, a provision that they should enjoy the equal privileges of citizens in our courts? This is the idea naturally suggested by the language. It is the right of these artificial citizens, under the provisions of the fourteenth amendment to the federal Constitution, guarantying the equal protection of the law, and it is the only construction which is in harmony with the provisions of our

constitutional system in its letter and spirit. No one would seriously contend that the Legislature could take away from a municipal corporation, in its private capacity, the power to sue an individual who had negligently injured its highways or other property rights, and this power on the part of the municipality to sue the individual carries with it the reciprocal obligation to be sued in a like case—the obligation to respond to the same rules and principles of law which govern the natural citizen—and while it may be true that the Legislature might create a municipal corporation, excluding from its control the highways within such municipality, and in this way take away the right of action entirely as against the city, in which event the plaintiff's right of action would be against the officer specially charged with the duty of maintaining such highways (Bennett v. Whitney, 94 N. Y. 302, 306, and authority there cited), we are clearly of opinion that, under the provision of the Constitution last above cited, the Legislature cannot create a municipal corporation, giving it control over its highways for the benefit of the municipality as a private corporation, and at the same time deny to the individual injured through the neglect of the corporation a right of action where an individual charged with the same duty would be liable. To hold otherwise is to assert the doctrine that the Legislature, created by the sovereign people of the state, may create a citizenship with civil privileges and immunities higher than those possessed by the creators— a logical absurdity, which can find no justification in the letter or spirit of our institutions.

We are aware that this conclusion is not in harmony with the language held in the case of Gray v. City of Brooklyn, 50 Barb. 365, 375, 2 App. Dec. 267, 273; but this case has been so often discredited as an authority that we feel free to consider the question of the true construction as open for this court, particularly as it has been very recently asserted by the Court of Appeals that "a corporation is a legal entity, with the unlimited right to sue and be sued within the lines of its charter powers" (Stoddard v. Lum, 159 N. Y. 265, 272, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541), which is exactly the doctrine for which we are contending. In the Gray Case, supra, it was said:

"This clause is not a restriction on the legislative power to determine what shall be, and what shall not be, a cause of action against a corporation. It provides only that, where there is a cause of action in favor of or against a corporation, it shall be enforced in the same way as if the same cause of action existed in favor of or against a natural person."

This, to a certain extent, is true; but we are unable to agree with the proposition that the Legislature could create a city, charge it with certain duties and obligations, and then exempt it from civil liability for neglect to discharge such duties, by which a third person sustained injuries. The Gray Case dealt with a provision of the charter of the city of Brooklyn, which was construed to relieve the city of liability for any nonfeasance or misfeasance of the common council, or any officer of the city or appointee of the common council, etc. The doctrine of the case as above cited was approved in Gray v. City of Brooklyn, 2 App. Dec. 267, 273, where it was said that:

"It was no part of the intention of that provision to render corporations liable upon all causes of action, the same as natural persons were, but merely

to provide that actions might be maintained against them the same as they could against natural persons, provided the legal causes for doing so were found to exist. It was to confer the capacity of being sued, not to define the cases in which suits might be maintained against them."

But this is obviously a mistaken view of the question, for the capacity to sue and be sued has always been an incident of corporate existence. 7 Am. & Eng. Ency. of Law, p. 684, and authorities there cited in note. The real purpose of this provision was to make the law uniform in its operation upon corporations, associations, joint-stock companies, and individuals, in so far as they came under the same circumstances and conditions. This doctrine has been so far applied that the result of the modern cases is that a corporation is liable civiliter for torts committed by its servants or agents, precisely as a natural person, and that it is liable as a natural person for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under seal nor a vote of the corporation constituting the agency or authorizing the act. Denver, etc., Railway v. Harris, 122 U. S. 597, 608, 7 Sup. Ct. 1286, 30 L. Ed. 1146, and authorities there cited.

In Fitzpatrick v. Slocum, 89 N. Y. 359, Earl, J., who subsequently wrote in Curry v. City of Buffalo, 135 N. Y. 366, 32 N. E. 80, had under consideration substantially the same statute as that involved in the Gray Case, supra, and he says:

"We are of opinion that the exemption created by this section is not so broad as claimed. There must be a remedy in such a case—where one is injured without fault of his own by a defect in one of the streets or bridges of the city—either against the city or some one of its officers."

In considering the Gray Case, supra, he says:

"It does not appear very clearly upon what ground that case was decided. It was a sufficient defense to the action that there was no negligence proven which was chargeable to the city; but, if more than that was decided in order to exempt the city from liability, it was merely that, where a plain duty was devolved upon certain officers, any one injured by a nonperformance or imperfect performance of that duty should take his remedy against the officers, and not against the city. It was not decided that, where an absolute duty rests upon the city, one who suffers injury from nonperformance of that duty cannot in any case have his remedy against the city."

See Hardy v. City of Brooklyn, 90 N. Y. 435, 440, 43 Am. Rep. 182, and Bieling v. City of Brooklyn, 120 N. Y. 98, 104, 105, 24 N. E. 389, where this same criticism of the Gray Case is repeated and indorsed.

It is clear, therefore, that the Gray Case has not determined the constitutional question whether the Legislature of this state may create an artificial citizen, and exempt him from liability for a neglect of duty which results in the injury of one without fault on his part; and respect for the letter and spirit of the Constitution, as well as the safety of individuals, demands that section 3 of article 8 of the Constitution should be construed to limit the power of the Legislature, in the creation of corporations, to the civil rights which belong to the natural citizen. This makes all corporations liable under the same circumstances which would involve an individual in liability; it gives equal protection of the law to all citizens, whether natural or artificial; and it accomplishes the high purposes for which governments are instituted among men, "deriving their just powers from the consent of the governed." Such a

construction places no unreasonable limitation upon the Legislature. It does not prevent its making reasonable regulations of the right of action, but it does operate to prevent the taking of "life, liberty or property" without due process of law, and this much citizenship has a right to demand at the hands of every department of government.

When the people of this state met in their sovereign capacity and enacted that no person should "be deprived of life, liberty or property without due process of law," there was an implied pledge on their part, and one which it is the duty of courts to enforce, that the Legislature should not have the power to exempt any person or corporation from the obligation of making just compensation when any of these rights were invaded. It was a "compact by which the whole people covenants with each citizen and each citizen with the whole people that all shall be governed by certain laws for the common good." Preamble to the Constitution of Massachusetts. That covenant was that these certain laws should be framed and maintained so that every citizen might at all times find redress in the courts whenever his constitutional rights were invaded. What worse mockery of justice than to say to the citizen that he shall not be deprived of life, liberty, or property without due process of law, and then to say that the Legislature may create an artificial person, endow him with power to act through agents and servants, and exempt this artificial person from the obligation of responding in damages when, through the negligence of this creation, the constitutional rights of the natural citizen are invaded and impaired? The covenant of the people with the individual is that he shall be protected in these rights; that he shall not be deprived of life, liberty, or property without a judicial determination that he has forfeited his right to the same, or that some one else has a better title; and this carries with it, by necessary implication, a guaranty that the courts shall be open to him against every individual citizen—every creature of the state—whenever these rights are threatened or impaired. If it does not, then the pledge of the Constitution is a mere formula, for experience teaches us that rights cannot be protected and justice cannot be accomplished without a resort to impartial tribunals.

The right to life includes the right of the individual to his body in its completeness and without dismemberment. Bertholf v. O'Reilly, 74 N. Y. 509, 515, 30 Am. Rep. 323. And this right is not to be construed in any narrow or technical sense. People v. Gillson, 109 N. Y. 389, 399, 17 N. E. 343, 4 Am. St. Rep. 465. Of what use is the constitutional guaranty that the plaintiff in this action shall not be deprived of life, liberty, or property without due process of law, if, when his right to life is invaded through the neglect of a duty which the village of Port Chester owed to him in common with others lawfully using the highways, he is met with a statute which practically exempts the corporation from liability? Is this carrying out in good faith the mutual covenants between citizens for their common welfare? Is it due process of law? "Due process of law is process due according to the law of the land," say the court in Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678, cited in Hurtado v. California, 110 U. S. 516, 533, 4 Sup. Ct. 111, 28 L. Ed. 232. "But it is not to be supposed," say the court in Hurtado v. California, supra, "that these legislative powers [of the states] are absolute

and despotic, and that the amendment prescribing due process of law is too vague and indefinite to operate as a practical restraint. It is not every act legislative in form that is law. Law is something more than mere will exerted as an act of power. It must be not a special rule for a particular person [corporation] or a particular case, but, in the language of Mr. Webster, in his familiar definition [of "law of the land"], 'the general law; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial,' so 'that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society'; and thus excluding, as not due process of law, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments and decrees, and other similar special, partial, and arbitrary exertions of power under the forms of legislation. Arbitrary power, enforcing its edicts to the injury of the persons and property of its subjects, is not law, whether manifested as the decree of a personal monarch or of an impersonal multitude." The same case cites with approval Brown v. Levee Commissioners, 50 Miss. 468, where, in speaking of due process of law, the court say:

"The principle does not demand that the laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue. It refers to certain fundamental rights which that system of jurisprudence of which ours is a derivative has always recognized. If any of these are disregarded in the proceedings by which a person is condemned to the loss of life, liberty, or property, then the deprivation has not been by 'due process of law.'"

See Riggs v. Palmer, 115 N. Y. 506, 511 (bottom of page), 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819.

That is, the Legislature may determine the duties of individuals and corporations within the limits fixed by the Constitution at will, but it has no constitutional power to exempt such individuals or corporations from the liability to respond in damages when a neglect of such duties operates to the injury of third persons, for that is taking away the guaranty of security to life, liberty, and property which belongs to the persons injured, and for which they covenanted on entering into society. As Burke puts it, legislatures "may alter the mode and application, but have no power over the substance of original justice." Tract on Popery Laws, 6 Burke's Works (Ed. Little & Brown) 323, cited in Hurtado v. California, 110 U. S. 532, 4 Sup. Ct. 111, 28 L. Ed. 232. See, also, Munn v. Illinois, 94 U. S. 113, 134, 24 L. Ed. 77, which requires that every right, when withheld, must have a remedy, and every injury its proper redress. Chief Justice Marshall in Marbury v. Madison, 1 Cranch, 163, 2 L. Ed. 60, citing Blackstone; Stief v. Hart, 1 N. Y. 20; Sadlier v. City of New York, 40 Misc. Rep. 78, 83, 81 N. Y. Supp. 308; Dyett v. Hyman, 129 N. Y. 351, 357, 29 N. E. 261, 26 Am. St. Rep. 533; Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Levy v. Dunn, 160 N. Y. 508, 55 N. E. 288, 73 Am. St. Rep. 699. In the Sadlier Case, supra, it was said:

"An act of the Legislature depriving a person in advance, as is claimed to be the case here, or subsequently, of a right of action for a trespass or direct

injury to his property, is void, for being in violation of the guaranty of due process of law."

If we are right in the conclusion that the Legislature, while free to grant such powers and impose such duties as it will, within the limits fixed by the Constitution, may not relieve the individual or corporation of the liability to be sued for a breach of that duty by which a member of this state is injured in his person or property, and this is the only construction of the Constitution in harmony with its high purpose, it follows that the plaintiff's cause of action against a wrongdoer is a right of property, and can be taken from him only by due process of law. Dyett v. Hyman, 129 N. Y. 351, 357, 29 N. E. 261, 26 Am. St. Rep. 533; Angle v. Chicago, St. Paul, etc., Railway, 151 U. S. 1, 19, 14 Sup. Ct. 240, 38 L. Ed. 55. In the latter case it was said:

"A right of action to recover damages for an injury is property, and has a Legislature the power to destroy such property? An executive may pardon and thus relieve a wrongdoer from the punishment the public exacts for the wrong, but neither executive nor Legislature can pardon a private wrong, or relieve the wrongdoer from civil liability to the individual he has wronged."

It only remains to consider what is due process of law, as applied to the case now before us. As we have previously suggested, due process of law is process due according to the law of the land, and—

"The clause 'law of the land' means a general and public law, equally binding upon every member of the community. * * * The right to life, liberty, and property of every individual must stand or fall by the same rule of law that governs every other member of the body politic or land under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were this otherwise, odious individuals and corporate bodies would be governed by one rule, and the mass of the community who made the law by another. The idea of a people, through their representatives, making laws whereby are swept away the life, liberty, and property of one or a few citizens, by which neither the representatives nor their other constituents are willing to be bound, is too odious to be tolerated in any government where freedom has a name. Such abuses resulted in the adoption of Magna Charta in England, securing the subject against odious exceptions, which is, and for centuries has been, the foundation of English liberty. Its infraction was a leading cause why we separated from that country, and its value as a fundamental rule for the protection of the citizens against legislative usurpation was the reason for its adoption as a part of our Constitution." Judge Catron in Van Zand v. Waddel, 2 Yerg. 260, cited and approved in Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 156, 17 Sup. Ct. 255, 41 L. Ed. 666, and in Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92.

See, also, the Federalist (Ford's Ed.) 379, 380; Opinion of the Judges of England, 20th of Henry VI; opinion of the Judges of England, 2d of Richard III; Wynehamer v. People, 13 N. Y. 378, 434.

In Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 159, 17 Sup. Ct. 258, 41 L. Ed. 666, it is said:

"Unless the Legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency, this statute cannot be sustained."

The court held that this could not be done. How, then, may it be said that the Legislature may pick out one corporation, or one class of cor-

porations, and exempt them from liability for negligence by which the constitutional rights of citizens are invaded? See, further, as to the law of the land, Bank of the State v. Cooper, 2 Yerg. 599, 24 Am. Dec. 517, 523; Jones v. Perry, 10 Yerg. 59, 30 Am. Dec. 430; Budd v. State, 3 Humph. 483, 39 Am. Dec. 189.

The judgment and order appealed from should be affirmed, with costs. All concur.

WILLARD BARTLETT, J. I concur in the result reached by Mr. Justice WOODWARD in this case, on the ground that upon the evidence the jury were justified in finding that there was a substantial compliance on the part of the plaintiff with the statutory requirement as to the time within which notice of his claim should be served upon the defendant. See Walden v. City of Jamestown, 178 N. Y. 213, 70 N. E. 466.