By the Covet.
Daniels, J.
Under the law as it existed before the act of 1862 was passed, the power to cause the streets and avenues of the city of Brooklyn to be graded, paved, and kept in repair, and from time to time regraded and repaved, was vested in the common council (Laws of 1854, p. 860, ch. 384, title 4, § 1). And, for the purpose of supplying the means of exercising that power, it was provided that the expenses of all such improvements should be assessed, and be a lien, upon the property benefited by them. This was sufficient, after the street in question had been graded, paved, and curbed under the authority thus conferred, to render it the duty of the common council to observe reasonable care and attention in keeping it in that condition. And a careless omission to perform that duty, through which an injury should result to a person entitled to insist upon its observance, would be sufficient to maintain an action in his favor, in a court of justice, for the purpose of securing redress on account of the injury. Mayor of N. Y. v. Furze, 3 Hill, 612; Wilson v. Mayor, &c. of N. Y., 1 Den. 595; Lloyd v. Mayor, &c. of N. Y., 5 N. Y. (1 Seld.) 369; Mills v. City of Brooklyn, 32 N. Y. 489, 500.
But in the present case no such want of reasonable care and attention was shown on the part of the common council, for there was no evidence given on the trial tending to prove that this body had notice of the condition that the streets were in, or that by the exercise of proper diligence and circumspection, it should have acquired knowledge of that condition.
hTothing like negligence on the part of the common council was, therefore, made to appear upon the trial of the cause.
*271 Assuming, as, perhaps, that properly should be done, on ac-' count of the peculiar form given to the objection on whióh the motion for a nonsuit was granted, that negligence was shown on 'the part of the mayor and aldermen, in their omission to communicate‘to the common council the notice they had each of them received, which is certainly as far as this' court can be justified in going under the evidence, then the question arises whether the action against the city should, on that account, have been maintained.
The difficulty in the way of doing that was created by the charter of the defendant (1862, p. 203, § 39).
By this section it is provided that the city itself “ shall not be liable in damages for any nonfeasance or misfeasance on the part of the common council, or any officer of the city, or appointee of the common cauncil, of any duty imposed upon them or either of them by the provisions of titles 4 and 5 of this act, or of any duty enjoined upon them or any or either of them, as officers of government, by any other provision of this act,, but the remedy of the party or parties aggrieved, for any such nopfeasance or misfeasance shall be by mandamus or other proceeding or action to compel the performance of the duty, or by other action against the members of the common council, officer or appointee, as the rights of such party or parties may by law admit if at all.”
The section was very imperfectly and inartistically drawn, but from the fact that the act containing it was an amendment of the act of 1854, which contained titles 4 and 5, while no such titles were contained in .the amendatory act, and that those titles included many of the duties imposed upon the common council and officers of the city, it must be presumed that when the legislature used the terms, “ this act,” in its reference to' those titles, it intended to refer to them as they were contained in the act of 1854, as it would be with that of 1862 incorporated into it by the amendments then made. The object of the legislature is clear, and that was to exonerate the city from liability on account of the. omission and misconduct of its officers, and to impose all the legal consequences of their acts directly upon the persons who might be guilty of such official misconduct.
*272 And that object can be secured by no other construction of this section."
Construed in this manner, then, it includes the present action, for the real ground of the complaint, upon which it was founded, was that two of the officers of the city had omitted to perform the duties officially enjoined upon them.
The plaintiff claims, however, that he should have been permitted to have maintained his action even under this construction of that section, and several reasons have been urged in support of that position.
The validity of those reasons will now be examined.
It is clear that the plaintiff had no vested right against the city when the act containing this section took effect as a law.
It was enacted on March 37, 1863, and, except one section not requiring notice, it went into effect as a law immediately, while the injury to the plaintiff's premises did not occur until the December following.
This section did not impair the obligation of a contract within the prohibition of the Constitution of the United States upon that subject.
Eor, even though an implied contract arose out of the acceptance of the act of 1854, that the powers conferred by it should be used and observed for the benefit and advantage of the city, it was not a contract with the plaintiff, but between the city and the State, by whose sovereign act the charter had been conferred.
As to the plaintiff, the obligation on the part of the city was that of a mere duty, and not that of a contract.
But even if it had been, or could be deemed a contract with the plaintiff, still the legislature had the power to change, modify, or amend it, without conflicting with the provision refered to in the Constitution of the United States. For the authority under which the act was passed retained that power over it in favor of the legislature.
This was done in express terms when the power to create corporations was provided for by the present Constitution of the State, article VIII., § 51 of Constitution of 1846.
The language used was explicit, that all general laws and special acts passed pursuant to that section might be altered *273 from time to time or repealed. When the act of 1854 was passed, it was with this important qualification attached to it by the Constitution.
And that was clearly sufficient to empower the legislature to make the change effected in it, if that was deemed advisable and expedient under the circumstances.
But it is insisted that the alteration made is inconsistent with the right °to sue corporations conferred by the last sentence of section 3 of article VIII. of the Constitution.
But that is mainifestly an erroneous view of this section.
For it was no part of the intention of that provision to render corporations liable upon all causes of action, the same as natural persons were, but merely to provide that actions might be maintained against them the same as they could against natural persons, provided the legal causes for doing so were found to exist.
It was to confer the capacity of being sued, not to define the cases in which suits might be maintained against them.
The right of action in cases of this kind arises out of the duty conferred by the statute in favor of the public, and that might have been qualified at the time of the enactment of the statute, precisely as it has. been by this amendment.
The legislature had the power to determine the form in which the franchises and obligations of ■ the municipal government should be conferred upon the city, and under the provision made by the Constitution, it did not part with the power by not exercising it at that time.
This section of the act of 1863 was not intended to divest the persons who might be affected by it of their right to redress, but to change and limit their remedies for injuries sustained by them.
And that power has always been deemed to be within the constitutional province of the legislature. Matter of N. Y. Protestant School, 31 N. Y. 574-585. The redress may not always prove to be as entirely adequate to the injury as an action directly against the corporation itself; .but even if that be conceded, it will not justify the conclusion that the act is in conflict with the Constitution on that account.
In theory the act. places the responsibility for the wrongs of *274 municipal officials where they justly belong—upon the persons by whose misconduct they may be produced.
It should have proceded a step further than it has gone, for the purpose of securing complete redress to those entitled to demand it, by requiring the officials of the city, before they enter upon the duties of their offices, to give ample security for the payment of the judgments recovered against them under its provisions. °
The judgment should be affirmed.