(112 App. Div. 81)

MacMULLEN v. CITY OF MIDDLETOWN.

(Supreme Court, Appellate Division, Second Department. March 22, 1906.)

CONSTITUTIONAL LAW—RIGHT TO REMEDY FOR INJURIES.

 Section 30 of the charter of the city of Middletown (Laws 1902, p. 1367), providing that no action shall be maintained for injuries to a person from the existence of snow or ice on a sidewalk or street, unless written notice thereof was actually given to the common council, and there was a failure to cause the snow or ice to be removed within a reasonable time after receipt of the notice, is invalid, as depriving persons injured of a legal remedy for the wrong done them.

Appeal from Special Term, Orange County.

Action by Charles MacMullen against the city of Middleton. From an interlocutory judgment (92 N. Y. Supp. 410) overruling a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action, defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, HOOKER, RICH, and MILLER, JJ.

Russell Wiggins, for appellant.

Thomas Watts (Abram F. Servin, on the brief), for respondent.

MILLER, J. We are required to determine the constitutionality of section 30 of the charter of the city of Middletown, which provides:

"But no such action shall be maintained for damages or injuries to a person sustained in consequence of the existence of snow or ice upon any sidewalk,

cross-walk or street, unless written notice thereof, relating to the particular place, was actually given to the common council and there was a failure or neglect to cause such snow or ice to be removed and the place otherwise made reasonably safe within a reasonable time after the receipt of such notice." Laws 1902, p. 1367, c. 572.

And we are to determine this question without the aid of any direct authority on the proposition. McNally v. City of Cohoes, 53 Hun, 202, 6 N. Y. Supp. 842, is not, as supposed, analogous. The statute there construed exempted the city from liability, unless actual notice of the dangerous or obstructed condition of the street or sidewalk should have been given to the common council of the city, at least 24 hours previous to the injury, and, while the General Term held that "notice given" implies a "giver," and that the statute was not satisfied by proof of actual knowledge, the Court of Appeals (127 N. Y. 350, 27 N. E. 1043) placed its affirmance upon the distinct ground that actual notice could be established by either direct or circumstantial evidence, and that, if the defendant had actual information, intelligence, or knowledge of the dangerous conditions, the requirements of the statute were complied with, and to the like effect are the subsequent cases bearing on this question. Smith v. City of Rochester, 79 Hun, 174, 29 N. Y. Supp. 539, affirmed on the opinion of the General Term, 150 N. Y. 581, 44 N. E. 1128; Sprague v. City of Rochester, 159 N. Y. 20, 53 N. E. 697. Perhaps the case nearest in point is Gray v. City of Brooklyn, 2 Abb. Dec. 267, which held valid a provision of the charter of the city of Brooklyn which exempted the city from liability for any nonfeasance or misfeasance on the part of the common council or any officer of the city, or appointee of the common council, and provided that the remedy of the party aggrieved for such nonfeasance or misfeasance should be against such officer; but this case is not an authority here, for two reasons: First, said statute was construed to have the effect of relieving the city of the duty of caring for the streets theretofore imposed upon it, and of devolving such duty on said officers, which is not the effect of the statute now under consideration, because it leaves the duty on the city; second, Gray v. City of Brooklyn has been overruled by subsequent decisions holding that the act did not have the effect of relieving the city from liability for the nonperformance of the primary duty imposed upon it respecting the care of its streets and bridges, but that said statute only applied to such duties as were primarily imposed upon the officers. Fitzpatrick v. Slocum, 89 N. Y. 359; Hardy v. City of Brooklyn, 90 N. Y. 435, 43 Am. Rep. 182; Bieling v. City of Brooklyn, 120 N. Y. 98, 24 N. E. 389.

It is suggested that the statute under consideration might be satisfied by proof of actual knowledge. It is easy to see how a statute requiring notice is satisfied by proof of knowledge, but it is difficult to see how "knowledge" can be substituted for "written notice." The canon of construction "that a thing which is in the letter of the statute is not within the statute itself, unless it is within the intention of the makers," has justified many judicial departures from the strict letter of statutes, but it is difficult to find in it excuse for saying that an intention unmistakably expressed did not exist. The effort to discover some relief from the injustice of this statute results from the fact that it shocks

our sense of right and wrong, and immediately suggests the inquiry whether it does not offend the fundamental law. If the Legislature had the power to impose such a condition, they have imposed it by the use of language as clear as could possibly have been used, and it seems to me therefore that, instead of attempting to make over the statute to fit our notions, we should ascertain whether the impression created by the first reading of the act, that it is not in consonance with the fundamental principles of our government, is borne out by an examination of the instrument limiting the powers of the Legislature; but if, giving the act every intendment in its favor and every presumption in support of its validity to which it is entitled, we are unable to find any substantial reason for saying that it is unconstitutional, it is our duty to give it effect.

In order to decide this question, we must first determine the nature of the liability of cities and villages for omission to discharge the duty imposed upon them respecting the care of their streets resulting in injury to individuals. Fortunately this question is easy of solution. In the opinion of Selden, J., found in the note to Conrad v. Trustees of Village of Ithaca, 16 N. Y. 158, the principle is stated:

"That whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to inure to the benefit of every individual interested in its performance."

A distinction exists in this state between duties imposed upon the municipality for its private or local interests and those imposed upon officers appointed or elected by it for the benefit of the public generally. In the one case, the municipality is regarded as a legal individual, the same as a private corporation, exercising powers for its corporate and individual benefit; in the other case, as a political division of the state, exercising sovereign power. In the one case, the primary duty is on the municipality, which is liable to a person injured by its breach of duty. In the other case, the duty is on the officer who is liable for either nonfeasance or misfeasance. In the one case, the rule respondeat superior applies to the corporation; in the other, to the officer primarily charged with a ministerial duty. This distinction is made clear by many authorities in this state, among which are: Maximilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Ham v. Mayor, 70 N. Y. 459; Ehrgott v. Mayor, 96 N. Y. 264, 48 Am. Rep. 622; Fire Ins. Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667; Missano v. Mayor, 160 N. Y. 128, 54 N. E. 744; Martin v. Mayor, 1 Hill, 545; Bailey v. Mayor, 3 Hill, 531, 38 Am. Dec. 669; Rochester White Lead Co. v. City, 3 N. Y. 463, 53 Am. Dec. 316; Lloyd v. City, 5 N. Y. 369, 55 Am. Dec. 347; Quill v. City of New York, 36 App. Div. 476, 55 N. Y. Supp. 889; Fitzpatrick v. Slocum, supra; Bieling v. City, supra. Whatever may be said of the reasons which have moved the courts to resolve particular duties under the one or the other of said classes, it is settled beyond dispute that the duty of caring for its streets belongs

to the first class, and that respecting such duty the municipality is governed by precisely the same rules as an individual or private corporation, and is liable for the acts of agents selected by it under the rule respondeat superior. See cases cited, supra. Therefore this action is a common-law action, and in no sense can be said to be statutory. The statute created the defendant, but that can be said of every corporation. See, also, City of Cleveland v. King, 132 U. S. 295, 10 Sup. Ct. 90, 33 L. Ed. 334; Barnes v. District of Columbia, 91 U. S. 540, 23 L. Ed. 440. We are now prepared to determine the effect and validity of the act in question. There can be no doubt as to its effect. It grants immunity to the defendant from the consequence of its neglect of duty, in so far as such neglect relates to the removal of accumulations of ice and snow, and thus presents the question whether it is competent for the Legislature to exempt a city from the consequence of its breach of a duty which it owes as an individual, without taking away the duty and devolving it upon some one else. While there is no direct authority upon the proposition, the question has been ably discussed by Mr. Justice Woodward in three cases (Barry v. Village of Port Jervis, 64 App. Div. 268, 72 N. Y. Supp. 104; Williams v. Village of Port Chester, 72 App. Div. 505, 76 N. Y. Supp. 631; Id., 97 App. Div. 84, 89 N. Y. Supp. 671); and, while perhaps the discussion was obiter, in view of the decision of the Court of Appeals in Walden v. City of Jamestown, 178 N. Y. 213, 70 N. E. 466, to the effect that a reasonable compliance satisfied the condition imposed by the statute then under consideration, the conclusion that a statute having the effect to deprive one of a remedy in such case was not a valid exercise of the legislative power was concurred in by every member of the court, except one in the first case cited, supra, and by every member of the court in the second case.

At the threshold of the investigation it is proper to consider that the Constitution is to be interpreted and given effect according to its object and purposes and in harmony with the spirit of our institutions. See opinion of Chase, J., in Calder v. Bull, 3 Dall. (U. S.) 386, 1 L. Ed. 648, and of Allen, J., in People v. Albertson, 55 N. Y. 50. It is a maxim of the common law that there shall be a legal remedy for the invasion of every legal right, and the language of Chief Justice Marshall, in Marbury v. Madison, 1 Cranch, 163, 2 L. Ed. 60, cannot be quoted too often:

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection. * * * The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested right. If this obloquy is to be cast on the jurisprudence of our country, it must arise from the peculiar character of the case."

The injury suffered in this case is not damnum absque injuria, the damages are direct, not consequential—the result of a breach of duty owed the plaintiff, not the indirect effect of the performance of a lawful act. It is a familiar rule of our law that, for every duty imposed, there is a correlative right to have it performed, and that every one interested in its performance may recover his damages suffered by its breach. Pauley v. S. G. & L. Co., 131 N. Y. 90, 29 N. E. 999, 15 L.

R. A. 194; Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536. The plaintiff has suffered an injury to his person from the breach of a duty which the defendant, as an individual, owed him. Can he lawfully be denied a remedy? It is not clear that he has a remedy against any one except the defendant. The primary duty is not on some officer, as it would be if the defendant were an involuntary subdivision of the state, like a town, in which case the officer would be liable at common law. Hover v. Barkhoof, 44 N. Y. 113. It is possible that the plaintiff may have a remedy against some officer of the defendant, but that would have to depend on such officer's personal neglect (Bennett v. Whitney, 94 N. Y. 302), not on the breach of the primary duty resting on the defendant, and, as that duty has not plainly been devolved upon any officer against whom a remedy for nonfeasance can be had (as said by Judge Finch, in Fitzpatrick v. Slocum, supra), it is not certain that the plaintiff could maintain an action against any officer of the defendant; and the validity of the act is to be tested by what may be done under it. Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289. Does the act in question deny the plaintiff a remedy for the wrong done him? It in effect says he shall have none, except upon the chance that some third person has served a written notice, which in my judgment is worse than saying he shall have none at all, because the right to a remedy is made to depend upon mere accident, not affecting the merits. The person in whose case there is the accident of a written notice may have a remedy —of course it is just as improbable that a third party will have given written notice as that the injured person will have informed the city how, when, and where he was going to get hurt. To all others the remedy is denied. There are phases of the subject from which it may be argued that the statute violates the constitutional provision guarantying equal protection of the laws, but I prefer to rest my vote upon another ground.

Under this statute the grossest culpability of the defendant, the plainest breach of its duty, the clearest actual knowledge on its part, give no remedy for the wrong, except for the chance of a written notice, which nobody expects will be given. This is equivalent to a denial of any remedy, and it is unnecessary to cite authority upon the proposition that, what the Legislature cannot directly do, it cannot do by indirection. Does the constitutional guaranty against the deprivation of life, liberty, or property without due process of law apply to such a case? The following quotations will show how sacred this constitutional guaranty is regarded by the courts, and with what liberality it is construed to protect those rights for the preservation of which government was established: This clause in the bill of rights is to have "a large and liberal interpretation," say the court, per Andrews, J., in People v. King, 110 N. Y. 423, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389, "The fundamental principle of free government, expressed in these words, protects not only life, liberty, and property, in a strict and technical sense, against unlawful invasion by the government, in the exertion of governmental power in any of its departments, but also protects every essential incident to the enjoyment of those rights." "The term 'liberty,' as protected by the Constitution, is not cramped into a mere freedom from physical restraint of the person of the citizen, as by incarceration, but

it is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare"—per Rapallo, J., in People v. Marx, 99 N. Y. 377–386, 2 N. E. 29, 52 Am. Rep. 34. "The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. Property may be destroyed, or its value annihilated. It is owned and kept for some useful purpose, and it has no value unless it can be used. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes, without which property cannot be conceived; and, hence, any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property"—per Earl, J., in Matter of Jacobs, 98 N. Y. 98–105, 50 Am. Rep. 636. "By the term 'life,' as here used [referring to the fourteenth amendment of the federal Constitution], something more is meant than mere animal existence. The inhibition against its deprivation extends to all those limbs and faculties by which life is enjoyed. The provision equally prohibits the mutilation of the body by the amputation of an arm or leg, or the putting out of an eye, or the destruction of any other organ of the body through which the soul communicates with the outer world. The deprivation not only of life, but of whatever God has given, to every one with life, for its growth and enjoyment, is prohibited by the provision in question, if its efficacy be not frittered away by judicial decision"—per Field, J., in Munn v. People, 94 U. S. 113, 24 L. Ed. 77. " 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. Weimer v. Bunbury, 30 Mich. 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights"—per Earl, J., in Stuart v. Palmer, 74 N. Y. 183–191, 30 Am. Rep. 289.

In the light of these utterances, can it be possible that the Constitution does not guaranty a remedy for a wrongful injury to one's person? If not, what becomes of our vaunted security in person and property? Would a law, providing that a person should not have a civil remedy for an assault, be constitutional? No one will argue that it would. Does it make any difference what the particular breach of duty happens to be which results in personal injury? Violated duty is the basis of all actions of this character, and, in determining this question, we must not at any stage of the discussion lose sight of the fact that the defendant is an individual whose violated duty has injured the plaintiff. Suppose the act had provided immunity to the defendant from the consequences of a trespass resulting in injury to private property, would any one contend that it was valid? Manifestly such an act would authorize the taking of property without due process of law. Is it possible that the Constitution regards one's person as less sacred than his property? "We do not think it is competent for the Legislature to deny, for any cause, to a party who has been illegally deprived of his property, access to the constitutional courts of the state for relief. If, as we have seen, he is denied all remedy for the wrong inflicted upon him, the deprivation

of his property becomes just as effectual as though it had been taken from him by direct legislative enactment," say the court, per Ruger, C. J., in Gilman v. Tucker, 128 N. Y. 190–202, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464. "Until a right exists, there can be no remedy. But when a right is given, whether by the common law or statute, there must be some remedy when it is withheld," say the court, per Grover, J., in Dougan v. Champlain Transportation Co., 56 N. Y. 1–5. The plaintiff had the right to the discharge of the duty owed him by the defendant respecting the care of its streets. That right has been violated, and, if he can have no remedy for the injury resulting from such violation, it seems to me we must revise our notions respecting the security in life, liberty, and property guarantied us by the bill of rights. The plaintiff's cause of action for the wrong done him is property. Angle v. Chicago, etc., R. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261, 26 Am. St. Rep. 533; Reid v. Mayor, 139 N. Y. 534, 34 N. E. 1102; Gilbert v. Ackerman, 159 N. Y. 118, 53 N. E. 753, 45 L. R. A. 118; Levy v. Dunn, 160 N. Y. 504, 55 N. E. 288, 73 Am. St. Rep. 699.

. To be sure, the plaintiff's cause of action had not accrued when the act was passed, but, if he did not then have a vested right in the particular cause of action, he did have a vested right to be secured from wrongful injury to either person or property. It will not be argued that the Legislature could deprive a person of all remedy for injuries already sustained. That would be the taking of property. Can it matter whether immunity is granted to the wrongdoer in advance of the injury, or whether the person wronged is deprived of a remedy after the infliction of the injury? In the one case property is taken, in the other, one's right to personal security is invaded. It is conceded by the demurrer that the defendant is a wrongdoer. The statute has not attempted to lessen its duty of caring for its streets. This duty was thus, in an early case, described by Chief Judge Nelson:

"It is upon the like distinction that municipal corporations, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly. As such, they are bound to repair bridges, highways, and churches, are liable to poor rates, and, in a word, to the discharge of any other duty or obligation to which an individual owner would be subject." Bailey v. Mayor, etc., of the City of New York, supra.

Speaking of the breach of this duty, Judge Earl, in Fitzpatrick v. Slocum, supra, said:

"There must be a remedy in such a case, where one is injured without fault of his own by a defect in one of the streets or bridges of the city, either against the city or some one of its officers."

If it is desirable to relieve municipalities of the obligation to respond to one injured without fault by reason of a defective condition of the streets, the duty of caring for the streets should be taken from the city and should plainly be devolved upon some officer who can be held accountable for his nonfeasance. But, unless we are prepared to overturn the principle now firmly fixed in the jurisprudence of this state that a voluntary municipal corporation must respond for a breach of this duty, upon the same theory as an individual is required to respond for

breaches of duty, the same rules should be applied to both. If the liability were statutory, I should admit that the Legislature could impose such conditions as it saw fit, or take it away altogether. But until it is decided by controlling authority that the courts of this state have been wrong for more than 60 years on the principle upon which such liability has been made to depend, or that, adhering to the principle, an exception may be made of this particular class of individuals, I shall insist that the Legislature has no power to do what has been attempted in this case.

The interlocutory judgment overruling the demurrer should be affirmed, with costs. All concur.