In the Matter of the Probate of the Last Will and Testament of FRANCES I. HEALY, Deceased.

In the Matter of the Application of the MOUNT MORRIS LIBRARY for Letters of Administration with the Will Annexed of the Goods, Chattels and Credits Which Were of FRANCES I. HEALY, Deceased.

ROCHESTER TRUST AND SAFE DEPOSIT COMPANY, Appellant; MOUNT MORRIS LIBRARY, Respondent.

Fourth Department, November 16, 1938.

*Mann, Strang, Bodine & Wright* [*George F. Bodine* of counsel], for the appellant.

*William J. Flynn* [*James O. Moore* of counsel], for the respondent.

*Cook & Horton*, for Edith C. Kuder.

DOWLING, J. On July 2, 1932, Frances I. Healy died at Mount Morris, Livingston county, N. Y., leaving a will which was probated in the Surrogate's Court of that county and letters testamentary were issued to Marietta C. Dayfoot on July 5, 1932. The will disposed of an estate consisting of real and personal property valued at $43,500. After directing the payment of debts and legacies totaling $8,000, the testatrix gave a life use of the remainder to her sister, Marietta C. Dayfoot. On the death of Mrs. Dayfoot the testatrix bequeathed $20,000 " to my Executor hereinafter named as Trustee to be used eventually with a like amount left or to be left by my sister [Mrs. Dayfoot] for the erection of a suitable library building in Mount Morris, N. Y., to take the place of the present building; said fund to be by my said Trustee invested and reinvested until such time as it shall seem desirable to the Trustees of the Mount Morris Library Association to use the same in the erection of such new library building, and when such trustees of such Library Association shall conclude that the moneys left under this clause, together with the funds left under similar clause in my sister's will, are sufficient with the accumulation of interest and income to erect a suitable library building, then I direct my said Executor and Trustee to pay over said sum to the said Mount Morris Library Association for the purpose aforesaid. * * * This bequest for the Library Association is made upon the condition that it shall take effect only in the event that the town of Mt. Morris, in proper and legal form shall within one year after my decease or after the decease of my sister, if she should outlive me, make permanent provision for an annual payment or contribution to the said Library Association in the sum of at least Fifteen hundred ($1,500.00) Dollars for the proper care and maintenance of the said Library Building and Library." She then made bequests to six legatees totaling $7,000. The remainder she bequeathed to the Mount Morris Library Association, providing the town of Mount Morris complied with the above condition, and

in the event that it did not comply therewith the entire residuary estate passed by bequest and devise " to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America." The will concludes as follows: " Lastly: I hereby appoint my sister, Marietta C. Dayfoot, Executrix of this my Last Will and Testament; and in case she does not survive me or live during the period necessary to carry out the provisions of my Will, then I appoint the Rochester Trust & Safe Deposit Company of Rochester, N. Y., Executor, and Trustee of the Trust herein created, with the same power of sale as is herein given to my sister as Executrix, hereby revoking all former wills by me made."

The executrix paid the debts, funeral expenses and all the legacies except the bequest for the Mount Morris Library Association. After these payments had been made, and on February 11, 1938, Marietta C. Dayfoot was adjudged incompetent to manage herself or her affairs and Edwards P. Ward, Esq., was appointed committee of her estate and person. At the time of Mrs. Dayfoot's adjudication as an incompetent, the estate in her hands as executrix consisted of $25,000 in personal property and real estate valued at $3,750.

Edith C. Kuder, a legatee under the will, Mount Morris Library and Rochester Trust and Safe Deposit Company made application to the Surrogate's Court of Livingston county for the revocation of the letters testamentary of Marietta C. Dayfoot on account of her incompetency. Edith C. Kuder prayed that letters with the will annexed be issued either to Edwards P. Ward, Esq., or to Genesee Valley National Bank and Trust Company or to herself. Mount Morris Library prayed that letters with the will annexed be issued to it. Rochester Trust and Safe Deposit Company prayed that letters testamentary and of trusteeship be issued to it. The learned surrogate made a decree revoking Mrs. Dayfoot's letters, denying the applications of Edith C. Kuder and Rochester Trust and Safe Deposit Company and granting letters to Mount Morris Library. Mrs. Dayfoot's letters were properly revoked. (Surr. Ct. Act, § 94, subd. 2; *Matter of Flood,* 236 N. Y. 408, 409.) From so much of the decree as denied its application for letters and as awarded letters to Mount Morris Library the Rochester Trust and Safe Deposit Company appeals. Edith C. Kuder did not appeal.

Edith C. Kuder's application was denied for the reason that she was no longer interested in the estate, her legacy having been paid and discharged. The application of Rochester Trust and Safe Deposit Company was denied on the ground that the death of Marietta C. Dayfoot was a condition precedent to its right to

letters. The application of Mount Morris Library was granted on the theory that the legacy to it had vested on the death of Frances I. Healy subject to being divested upon the failure of the town of Mount Morris to provide for the annual payment of $1,500 for the support of the proposed library and as a residuary legatee it was entitled to a preference under subdivision 2 of section 133 of the Surrogate's Court Act.

We are not concerned with the construction or validity of the trust provision of Mrs. Healy's will. The issue is whether, under the language of the will, appellant was entitled to letters as a matter of law. Decision of this question depends upon the intent of the testatrix to be determined, if possible, from the wording of the will itself.

At the outset we may infer that the testatrix did not regard any of the legatees, residuary or otherwise, sufficiently to name such legatee an executor or trustee under the will. The contrary is true in respect to the appellant. May we not assume also that the testatrix did not name Mount Morris Library as an executor and trustee because a trustee must not be a beneficiary of the trust committed to it. (*Brown* v. *Spohr*, 180 N. Y. 201, 209.) The assumption is permissible also that, to the executrix at least, the accumulation of a fund sufficient for the erection of a building for the Mount Morris Library was a substantial business undertaking and of such character that the fund should be placed in the hands of a disinterested trust company until such time as the trustees of the Mount Morris Library were ready to act.

" In the construction of a will we seek the intent of the testator as exhibited by the words he has selected." (*Matter of Bump*, 234 N. Y. 60, 63.) Testamentary intent " is embodied in the will read in its entirety." (*Livingston* v. *Ward*, 247 N. Y. 97, 106.) " In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will." (*Matter of Durand*, 250 N. Y. 45, 54.) " The courts are not concerned with the writing of a new will for the deceased but rather with bringing about the result intended by the testator." (*Matter of Bloomingdale* 278 N. Y. 435, citing *Herzog* v. *Title Guarantee & Trust Co.*, 177 id. 86, 92.) In the search for the testator's intent " The court struggles to preserve, and surrenders to nothing short of obvious compulsion. In the attainment of its end, it may ' reject words and limitations, supply them or transpose them, to get at the correct meaning.' " (*Matter of Gallien*, 247 N. Y. 195, 200, citing *Phillips* v. *Davies*, 92 id. 199.) Judicial tribunals must " thrust aside technicalities, fill in as necessary that which is missing and interpret liberally that which is written in progress-

ing to their decisions committing the execution of wills to those who were within the contemplation and intention of the testator." Once ascertained this intention " will be carried out in so far as it is not inimical to law." (*Matter of Bergdorf*, 206 N. Y. 309, 312, 313.) " So far as possible we must follow what was plainly the intention of the testatrix." (*Matter of Buttner*, 243 N. Y. 1, 6.) To establish a right to letters, an applicant " must seek and find in the will a designation of itself as an executor." (*Matter of Bergdorf, supra*, p. 312.)

What was the testatrix's intent as expressed in the will? Appellant was the testatrix's first choice for trustee and her second choice for executor and, if Mrs. Dayfoot had died before the testatrix, appellant was her first choice for both offices. Did the testatrix intend to nullify this reasonably manifest intention by any limited, narrow or restricted use of the word " live " as used in the expression " and in case she does not survive me or live during the period necessary to carry out the provisions of my Will? " Did she intend to create a condition precedent to appellant's right to letters, thereby creating an hiatus before letters could be issued to appellant? We think not. It is reasonably clear from the context of the will that the testatrix used the word " live " in the sense that it connoted such possession of mental and physical faculties as would enable her sister to discharge the duties of her office. The testatrix never intended such a narrow and restricted use of the word " live " as was supposed by the learned court below. Using the word " live " in its broader sense, namely, to be in possession of " all those limbs and faculties by which life is enjoyed," and not in the restricted sense of " mere animal existence," gives full expression to the reasonably obvious intent of the testatrix. (Dissenting opinion in *Munn* v. *Illinois*, 94 U. S. 113, 142; cited with approval in *MacMullen* v. *City of Middletown*, 112 App. Div. 81, 88.) We, therefore, construe the above expression as if it read " and in case she does not survive me or live or she becomes incapacitated to discharge her duties during the period necessary to carry out the provisions of my will." We think the designation of the appellant as executor and trustee is to be found in the will itself and that the contingency has arisen which entitled appellant to letters as matter of law, no objections regarding its qualifications having been raised.

The decree, in so far as appealed from, should be reversed on the law, with costs payable out of the estate, and the matter should be remitted to the Surrogate's Court to proceed in accordance with this opinion.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and DOWLING, JJ.

Decree, so far as appealed from, reversed on the law, with costs payable out of the estate, and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion.